**TEXTILE WORKERS UNION OF AMERICA, AFL–CIO, CLC, Plaintiff,**

v.

**SCOTTEX CORPORATION, Defendant.**

**KNITGOODS WORKERS' UNION, LOCAL 155, I.L.G.W.U., Plaintiff,**

v.

**SCOTTEX CORPORATION, Defendant.**

**Nos. 72 Civ. 1357, 72 Civ. 694.**

United States District Court,
S. D. New York.

June 20, 1972.

Lieberman, Aronson & Rosenberg, by Marshall L. Rosenberg, New York City, for Local 155 I.L.G.W.U.

Patricia E. Eames, and Joel Ronald Ax, New York City, for Textile Workers Union of America, AFL–CIO, CLC.

Levin, Rosmarin & Schwartz, by Arnold Levin, New York City, for Scottex Corp.

OPINION

TYLER, District Judge.

These two cases present another chapter in the recent labor difficulties of

---

Scottex Corporation, a manufacturer of textile fabrics at plants in New York and Texas. In each case, the labor union representing Scottex's employees, respectively, at its New York and Texas plants petitions for an order enforcing an arbitration award.

## THE COMPLAINTS

Civil Action 72 Civ. 694 HRT is a petition by Knitgoods Workers' Union, Local 155, ILGWU ("Local 155") to enforce an arbitration award entered by George J. Mintzer, Esq., the so-called "impartial chairman" here in New York for the industry, on December 15, 1971. That arbitration was initiated in part or indirectly by a complaint of Local 155 that Scottex's establishment and maintenance of a knitting plant in Carrollton, Texas violated Article 24 of the collective bargaining agreement between the Local and Scottex. After hearings, the impartial chairman entered an award in which he agreed substantially with the Local 155; required that within 60 days from the date thereof Scottex would cease all knitting operations at its Carrollton plant; and that upon failure to comply with this direction, Scottex would be liable to Local 155 in damages at the rate of $2,000 per week for each week of continuing violation of his award.

As indicated by the petition or complaint in Civil Action 72 Civ. 1357 HRT, the award of Chairman Mintzer was only the beginning of Scottex's current problems. On March 22, 1972, arbitrator Joseph F. Wildebush filed an award which, by its terms, effectively directed Scottex not to comply with the Mintzer award. The Wildebush award arose from the fact that the plaintiff Textile Workers Union of America, AFL–CIO, CLC ("Textile Workers") had organized the employees of the Scottex plant in

Texas; specifically as of February 8, 1971, Textile Workers and Scottex had executed a collective bargaining agreement to cover the employees of Scottex at the Carrollton plant. Thus, once Chairman Mintzer entered his award, it understandably followed that Textile Workers, under the broad arbitration clause of its contract,[1] presented to arbitrator Wildebush the question of whether or not Scottex could cease operations at its Carrollton plant. Textile Workers had petitioned for arbitration upon receipt of a letter dated February 11, 1972 from an attorney for Scottex informing Textile Workers that Scottex had no alternative, in light of the Mintzer award, but to close down its Texas operation. After hearings, arbitrator Wildebush found as a fact that Scottex, notwithstanding its clear preference to the contrary, was constrained by the Mintzer award to close down its Carrollton operation. Thereupon, Mr. Wildebush rendered an award enjoining Scottex from closing its Texas plant. Further, he provided that if Scottex disregards his award, Textile Workers may come before him again for the purposes of proof and assessment of damages.

## OTHER RELEVANT FACTS AND PROCEEDINGS

Scottex is a publicly owned corporation with its shares traded on the American Stock Exchange. For some years it has been engaged in the production of what are called in the trade both "fancies" and "plains", meaning plain and fancy, single and double knit, circular knitted textile fabrics. Its fancies are fashion-oriented items which are made here in its Brooklyn plant or plants. In the opinion of the company, fashion-oriented items should be produced in the New York City market area. On the other hand, it is the view of Scottex that

---

1. See Sections XIII ("Adjustment of Grievances") and XIV ("Arbitration") of Agreement dated February 8, 1971:
 "Should differences arise between the Employer and the Union . . . in regard to wages, working conditions, or other matters arising out of the enforcement of this agreement, or its interpretation, such differences shall be settled (by grievance steps and final arbitration)."

its plain goods can be produced at much lower rates in the South and Southwest where wage rates, with or without union contracts, are lower than those here in New York. Although Local 155 may have contended otherwise, there is evidence that in November, 1969, Scottex informed both Local 155 and Textile Workers Union that it planned to commence plant operations in Texas. At that time and today, both of Scottex's Brooklyn plants are in full operation with no lay-offs, and the same is true at the Carrollton plant. Indeed, Scottex claims without refutation here that it has added in Brooklyn a total of about 150 Local 155 employees as a result of the start up of its Texas operation.

In the summer and fall of 1971, Local 155 and Scottex began to have differences which in some measure stem from Local 155's concern about the Texas plant. On October 26, 1971, ILGWU called a strike at both Scottex factories in Brooklyn. Scottex then filed a Civil Action 71 Civ. 4826 HRT in this court, and there followed proceedings resulting in a temporary restraining order staying the strike and an order requiring the parties to go to arbitration.[2] The parties then purported to comply with the court order by proceeding to arbitration before Chairman Mintzer. Although the sole issue ostensibly was that of the legality of the strike, Chairman Mintzer took extensive evidence produced by Local 155 on the operation of Scottex's plant in Carrollton. As has been seen, the Mintzer award of December 15, 1971 followed.

In the meantime, on October 26, 1971, Scottex had filed charges against Local 155 before the Regional Director of the National Labor Relations Board, contending that Article 24 of its collective bargaining agreement with Local 155 was illegal on its face as a "hot cargo clause".[3] The Regional Director refused to issue charges because the collective bargaining agreement had been signed more than six months before Scottex filed charges. In other words, the Regional Director was of the view that the statute of limitations on this question had run. Undeterred, Scottex filed amended charges with the NLRB. Immediately after the Mintzer award on December 15, the regional office of NLRB ruled that it considered itself bound by the Mintzer interpretation of Article 24; hence, NLRB refused to issue charges. Scottex has taken an appeal to the Board in Washington where the matter is still under advisement.

On the basis of the foregoing matters, this court has come to the following conclusions:

1. There is no doubt but that the arbitration clauses contained in both relevant collective bargaining agreements are so-called "broad clauses" which require under current law that the issues between Scottex and Textile Workers of America on the one hand, and Scottex and Local 155 on the other are properly arbitrable.

2. Plainly, the Mintzer award of December 15, 1971 and the Wildebush award of March 22, 1972 are in direct conflict, thereby subjecting at least Scottex and the Textile Workers employees at Carrollton, if not Local 155 and its members working at the Brooklyn plants, to potentially serious business and job losses.

2. The relevant collective bargaining agreement between Local 155 and Scottex contains a broad arbitration clause:
 "Any and all disputes, complaints, controversies, claims and grievances arising under . . . or in any manner related to this agreement (shall be arbitrated)." (Article 34).

3. "24. The Employer shall cause all the work for which his shop, factory or mill shall have facilities and suitable machinery and equipment to be performed in his own shop, and he shall not cause any such work to be made or obtain such fabrics outside of his own shop unless the workers of his own shop are fully supplied with work, and then only in shops or from firms which are under contractual relationship with the Union and which comply with the terms thereof."

3. As a corollary to paragraph 2 hereinabove, there is a substantial question presented by Textile Workers of whether or not the Mintzer award effectively disenfranchises that union as the appropriate bargaining representative of the workers at the Scottex plant in Carrollton.

Thus, the difficult ultimate question presented is: what relief can and should be afforded the parties in these unique circumstances? Able counsel for the two unions and the company have briefed the matter but admittedly have been unable to find any precedent squarely in point. In part, perhaps, for that reason, counsel for both unions stoutly press as their primary argument that this court is obliged to enforce each of the arbitration awards in question. As indicated, however, I have concluded that the awards are in direct conflict and that, if enforced, they would almost certainly cause serious harm or disadvantage to at least two of the three parties before the court.

 It has been held in this circuit that a federal district court has jurisdiction in a case at least somewhat analogous to this—and concomitant power to order a tripartite arbitration. Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Association, 414 F.2d 1326, at 1329 (2d Cir., 1969), affirming 293 F.Supp. 1400 (S.D.N.Y., 1968). This power to order tripartite arbitration, of course, is not absolute but discretionary in light of the circumstances of a given case, including the nature and content of the arbitration clauses in the collective bargaining agreements. Ibid., ["The contracts that CBS had with ARBA and with Local 1212 contain broad arbitration provisions. Were this not so, we would have a very different situation."]. Given that the collective bargaining agreements in this case contain broad arbitration clauses, and because I have found that there is a clear conflict between the Mintzer and Wildebush arbitration awards, I conclude that it would be a proper exercise of judicial power to direct the parties here to submit their differences in tripartite proceedings before an impartial arbitrator whom they will have a role in selecting.

 In addition to questions or issues heretofore indicated, I note specifically that the tripartite impartial arbitrator will be required to explore another substantial legal issue as to whether or not the Mintzer construction of Article 24 of the Local 155 collective bargaining agreement is correct. Put differently, Scottex has raised a serious question as to whether or not the Mintzer construction of Article 24 constitutes a violation of Sections 7 and 8(a) of the National Labor Relations Act as amended. 29 U.S.C. § 151 et seq. In the absence of circumstances such as fraud, this court would ordinarily lack authority to inquire into the correctness of Mintzer's award. See United Steel Workers v. Enterprise Wheel, etc., 363 U.S. 593, 80 S.Ct. 358, 4 L.Ed.2d 424 (1960). Because the awards are in direct conflict, however, the impartial arbitrator will have to inquire into the correctness of Mintzer's award in an attempt to resolve the controversy.

 As indicated, I understand Local 155 and Textile Workers to take the primary position in these cases that the respective awards which they obtained should be enforced. Presumably, this primary position is based in part upon the argument that it would be a violation of their respective contracts to go beyond the terms thereof and bring in a third party, along with Scottex, before a new arbitrator. But as the Supreme Court and lower federal courts have observed, a collective bargaining agreement is something more than a common law contract. Typically, the courts have taken pains to point out that a collective bargaining agreement is a generalized code to govern a broad spectrum of problems, grievances and disputes which cannot be wholly anticipated by black

letter law or indeed even by the draftsman of the collective bargaining agreements in question. See United Steel Workers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, at 578–579, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). With these considerations in mind, therefore, this court, with approval of the Court of Appeals, has rejected this argument. Columbia Broadcasting System, Inc. v. American R & B Association, supra, 293 F.Supp. 1400.

Finally, I am mindful of the fact that Scottex still has pending its appeal to the National Labor Relations Board in Washington. Although none of the parties here have done so, one might plausibly argue that the court should stay its hand in expectation of the possibility that the Board's disposition of the appeal might totally or in large measure dissipate the conflict between the two arbitration awards. In my view, there are several difficulties with this approach. First, given the history of the proceedings before the Regional Director of the NLRB to date, there is a substantial likelihood that the Board may not reach the merits of Scottex's contentions. Second, even if the Board does reach the merits, it is not certain that its decision would completely resolve the conflict between the two arbitration awards here. Finally, from what has already been said, this court clearly has jurisdiction of these controversies, all three parties are contractually committed to broad arbitration of their differences and a tripartite arbitration here presumably will give all three parties ample opportunity to be heard and to receive a binding determination of their differences.

Accordingly, the parties are directed to settle an appropriate order or orders on notice to reflect the foregoing ruling. In particular, the parties should address themselves to appropriate machinery to be contained in an order or orders for selection of an impartial arbitrator to preside in the contemplated tripartite proceedings.