**LOCAL 201, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING & PIPEFITTING INDUSTRY, AFL–CIO, Plaintiff,**

v.

**SHAKER, TRAVIS & QUINN, INC. and Local 38 Sheet Metal Workers International Association, AFL–CIO, Defendants.**

No. 82 Civ. 8496(MEL).

United States District Court,
S.D. New York.

Jan. 20, 1983.

---

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiff; Robert A. Cantore, New York City, of counsel.

Robert M. Saltzstein, Lake Success, N.Y., for defendant Shaker, Travis & Quinn, Inc.

Jeffrey S. Dubin, Lake Success, N.Y., for defendant Local 38 Sheet Metal Workers Intern. Ass'n, AFL–CIO; Peter J. Chimento, Lake Success, N.Y., of counsel.

LASKER, District Judge.

This action arises from a dispute between two unions as to which union's members are entitled to perform the fabrication of plastic inspection boxes, used to ensure against leaks in piping. The employer, Shaker, Travis & Quinn, Inc. ("Shaker") has stated its intention to assign the work to members of Local 38 Sheet Metal Workers International Association ("Local 38"). Local 201, United Association of Journeymen and Apprentices of the Plumbing & Pipefitting Industry ("Local 201") alleges that its contract with Shaker provides that the fabrication of the boxes is to be assigned to Local 201 members, and that the dispute concerning the work assignment should be submitted to arbitration.

Shaker and Local 38 have filed unfair labor practice charges against Local 201 with the National Labor Relations Board

("the Board"), Albany Sub-Regional Office, Third Region. A Notice of Hearing has been issued on the charges, pursuant to Section 10(k), 29 U.S.C. § 160(k), and a hearing date has been set for January 25, 1983 "to determine the dispute out of which the unfair labor practice shall have arisen." 29 U.S.C. § 160(k).

Local 201 moves for a preliminary injunction to enjoin Shaker from assigning the disputed work to members of Local 38 pending arbitration. Local 201 also seeks an injunction ordering Shaker and Local 38 to join Local 201 in tripartite arbitration in order to resolve the assignment dispute. Shaker moves to stay arbitration pending the Board's determination on the 10(k) proceeding. Finally, Local 38 moves to dismiss the action as against it for lack of subject matter jurisdiction.

### 1. *Shaker's Motion to Stay Arbitration*

Shaker argues that the issue to be submitted to the arbitrators is precisely the same as the issue to be presented to the Board and that to allow the arbitration to proceed will result in a waste of resources because even if the arbitrators were to reach a different result than the Board, they would be bound by the Board's ruling. Local 201 answers that submission of the dispute to arbitration is in accord with the well-recognized national policy favoring arbitration of labor disputes. Although the Board has authority to reverse an arbitrator's decision, it may choose to defer to his judgment, and, should that occur, the efforts spent in arbitration would not be wasted. Moreover, Local 201 argues that the nature of the proceedings before the respective tribunals will be different in that the Board is not bound by the contracts among the parties, whereas an arbitrator is.

The right to proceed with arbitration despite the pendency of a Board hearing was established in *Local 771, I.A.T.S.E. v. RKO General, Inc.,* 546 F.2d 1107 (2d Cir.1971). In *Local 771,* a union failed to demand arbitration while a Board determination was pending. After the Board's ruling, which omitted decision on an issue of signif-

icance to the union, the union filed a demand for arbitration. The Court of Appeals upheld the arbitrator's determination that the union's demand was untimely; stating that, "The NLRB's assumption of jurisdiction over the dispute ... did not provide a legal excuse for Local 771's failure to demand arbitration." 546 F.2d at 1114. The court stated that the union should have allowed the *arbitrator* to decide "whether the dispute must be resolved under the terms of the contract or deferred until termination of the other pending proceedings." *Id.* It is illogical to suggest, as Shaker does, that a union can be held time-barred for failure to demand arbitration, as in *Local 771,* and that nevertheless the court should stay the arbitration. *See also A. Seltzer & Co. v. Livingston,* 253 F.Supp. 509, 515 (S.D.N.Y.), aff'd, 361 F.2d 218 (2d Cir.1966). This ruling does not, of course, prevent Shaker from applying to the arbitrator for a stay.

Shaker's reliance on *Moshlak v. American Broadcasting Co.,* 423 F.Supp. 774 (S.D.N.Y.1976), is misplaced. In *Moshlak,* the question presented was whether this *court* should proceed to resolve a dispute which was also pending before the Board, and we held that it should not. However, there is no preference in law for judicial resolution of labor disputes. By contrast, in the instant action, the question is whether to preclude an arbitrator from deciding a matter. The national policy favoring resolution of labor disputes by arbitration places the instant action on an entirely different footing than *Moshlak.* Accordingly, Shaker's motion to stay arbitration is denied.

### 2. *Local 201's Motion to Enjoin Shaker from Assigning the Work Pending Arbitration.*

Local 201 contends that it will suffer irreparable injury in the following respects unless Shaker is enjoined from assigning the work to Local 38 during the pendency of the arbitration. First, it will suffer a loss of prestige in the labor community if it appears to the membership of the union

that Local 201 cannot enforce its contract. Second, the employer's expressed preference is given great weight by the Board in its ultimate decision on a work assignment dispute, and if Shaker is allowed to express its preference for Local 38 by assigning the work to it prior to the Board's determination, Local 201 will virtually be precluded from prevailing before the Board. Third, Local 201 argues that money damages would be an inadequate remedy because it will be impossible to determine which union members would have gotten the work had the work been assigned to Local 201.

Shaker replies that money damages are available for a union's loss of prestige and that money damages for the work assignment claim, if awarded, would be easily calculable. Furthermore, Shaker argues that Local 201's second contention improperly asks the Court to assume that the Board will give undue weight to the employer's preference. Finally, Shaker argues that regardless of the possible injury to Local 201, the balance of hardships tips decidedly towards Shaker because Local 201 members are not qualified to fabricate the boxes, and, if Shaker is compelled to assign the work to them, it will risk alienating its largest employer, International Business Machines ("IBM"), for whom the work is to be performed. (Affidavit of Robert M. Saltzstein, filed January 12, 1983).

Preliminary injunctive relief requires a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir.1979).

The Second Circuit has recently considered the issue of irreparable injury in the context of a work assignment dispute. In *Local 553, Transport Workers Union v. Eastern Air Lines, Inc.*, 695 F.2d 668 (2d Cir.1982), the court found that irreparable injury was present because of the special difficulty in that case in determining the identity of the union members to whom money damages would be due if the union was ultimately to prevail on the merits. However, the court noted

> "in the more typical labor disputes in which a company has eliminated a number of positions, there is no similar irreparable harm to justify a preliminary injunction because the financial injury will fall directly on an easily ascertainable group of employees—the most junior members."

*Id.*, 695 F.2d at 678.

■ Applying the *Local 553* ruling to the facts presented in case at bar, we find no threat of irreparable injury. First, Local 201 has not explained why it will be particularly difficult for it to determine which members would be entitled to damages. That is, Local 201 must have some means for determining which members it will give the work to if it receives the assignment, and it has not explained why it cannot use the same means for determining which members are to receive damages, in the event that any are awarded.

In view of the stress we placed on this point in discussions with counsel, we assume that there are no practical difficulties in determining who would be entitled to damages, if they should be awarded. The situation in *Local 553* was entirely different, in that the job assignments in dispute there were proven to have been awardable to individual employees through a bidding system, and, if the bidding system were upset, it would "have ramifications for bidding by the entire membership." *Id.*, 695 F.2d at 677.

Second, loss of prestige is too tenuous a claim on which to base a finding of irreparable harm. No proof has been presented that the union will suffer any special loss of esteem as a result of losing this particular work assignment. It can be assumed that union members are aware that these disputes arise and need to be settled, and that even the best union "can't win them all." Moreover, we are informed that where such a loss of esteem has been found to have occurred in fact, arbitrators have awarded money damages in compensation.

Finally, the claim that Local 201 may be prejudiced because the Board will give undue weight to the employer's preference for Local 38 is not a pertinent consideration. We are unwilling to accept Local 201's assumption that the Board will fail to carry out its statutory duties in an appropriate manner. *Cf. Moshlak, supra,* 423 F.Supp. at 778.

Moreover, even if Local 201 had established irreparable injury, it has failed to establish either likelihood of success on the merits or a balance of hardships tipping decidedly towards Local 201. While we of course take no position on the merits of the dispute—and are not called upon to do so—we note that Shaker insists that it is not contractually obligated to assign the work to Local 201 and that, on the present record, it is not possible to determine which party's interpretation of the contract and the boxes is more persuasive or likely to prevail.

With respect to the balance of hardships, Local 201 and Shaker each asserts that it will face serious burdens if the ruling is against it. Shaker's fear of the loss of its IBM contracts appears at least as weighty as Local 201's concern over the loss of this particular work assignment.

Accordingly, Local 201 has failed to establish the prerequisites for a preliminary injunction, and its motion is denied.

### 3. *Tripartite Arbitration and Local 38's Motion to Dismiss*

Local 38 asserts that the Court lacks subject matter jurisdiction over it because § 301 of the Labor Management Relations Act, the jurisdictional provision on which Local 201 relies, covers only suits "for violation of contracts between an employer and a labor organization." Local 38 asserts that because it does not have any contract with Local 201, § 301 does not confer jurisdiction over it.

Local 201 answers that the Court has jurisdiction of the case on the basis of Local 201's contract with Shaker, and that, once the Court has jurisdiction of the case, any "necessary" party, as defined by Fed.R. Civ.Pr. 19, may be joined as a defendant regardless whether there is an independent basis of federal jurisdiction over him.

Local 38 replies that Rule 19 does not expand the jurisdiction of the federal courts, and that, if there is no subject matter jurisdiction over the party, the fact that it is a necessary party under Rule 19, does not confer jurisdiction.

■ While Rule 19 does not confer jurisdiction over a party, see 3A J. Moore and J. Lucas, *Moore's Federal Practice* ¶ 19.04[2.–1] at 19–66 (2d ed. 1982), it does allow joinder of a party whose presence does not deprive the court of jurisdiction and "in [whose] absence complete relief cannot be accorded among those already parties." Local 38 does not argue that complete relief can be accorded to the parties in its absence. It asserts that its joinder would deprive the Court of jurisdiction.

■ We disagree. In *Columbia Broadcasting Systems, Inc. v. American Recording and Broadcasting,* 414 F.2d 1326 (2d Cir.1969), the court considered the question of jurisdiction in the context of a similar case concerning a work assignment dispute between two unions in which one union sought to avoid an order to enter into tripartite arbitration by arguing that the court lacked jurisdiction because there was no contract between it and the other union.

The court held that jurisdiction was proper because "[t]here is ample authority holding that § 301 gives the federal courts broad jurisdiction to deal with the many types of controversies that arise between labor and management." *Id.* at 1328.

The court went on to state, in language particularly relevant to the instant action:

"Thus, even though the statute only specifically mentions 'violation' of contracts, federal courts have taken jurisdiction over disputes between unions and employers when no formal contracts between them were in existence. This being so, the district court correctly found it had jurisdiction over a work assignment dispute between two unions when both unions had contracts with the same em-

ployer, and the employer, even though it does not claim a violation of either contract, seeks judicial action."

*Id.* at 1328.

We find that, as construed in *CBS*, § 301 confers jurisdiction over Local 38 in the circumstances presented. Local 38's motion to dismiss is therefore denied.

The question remains whether the Court should exercise its jurisdiction to order tripartite arbitration.

■ The power to order tripartite arbitration is discretionary. *Textile Workers Union v. Scottex Corp.*, 344 F.Supp. 243, 246 (S.D.N.Y.1972) (Tyler, J.). The dispute out of which the instant action arose is a three-way dispute. Both unions have collective bargaining agreements with the employer and both collective bargaining agreements provide for arbitration of grievances. Both unions contend that Shaker has contracted to assign to their members the work in question.

■ Shaker argues that tripartite arbitration is appropriate only in circumstances in which both unions have already conducted separate arbitration proceedings with the employer which have resulted in conflicting awards. While it is true that tripartite arbitration has been ordered in such circumstances, *see, e.g., Textile Workers Union v. Scottex, supra,* we see little to be gained by requiring the parties to expend the time and effort necessary for two sets of arbitration proceedings. Such a requirement would be particularly ill-advised in cases such as the one at bar in which the job at issue is of limited duration (the employer estimates that the entire job will require 107 "man days") and may be completed before two sets of arbitration can be conducted.

Tripartite arbitration has been praised as "practicable, economical and convenient for the parties and the arbitrator." *CBS, supra,* 414 F.2d at 1329 (quoting the district court at 293 F.Supp. 1400, 1403). Moreover, "it not only avoids the duplication of effort but the possibility of conflicting awards." *Id.* Under the circumstances, it appears to be the most sensible means to resolve a dispute which is concededly three-sided.

Accordingly, the parties are ordered to proceed to tripartite arbitration. In the event that the parties are unable to resolve any dispute which may arise as to the appropriate arbitral procedures, counsel are to advise the Court within five days of the date of this order.

\* \* \*

In summary, Shaker's motion for a stay of arbitration is denied. Local 201's motion for an injunction to restrain Shaker from assigning the work to Local 38 pending arbitration is denied. Local 38's motion to dismiss is denied. Finally, Local 201's motion for an order that the parties proceed to tripartite arbitration is granted.

It is so ordered.