ACTIVE GLASS CORP., Petitioner,

v.

ARCHITECTURAL AND ORNAMENTAL IRON WORKERS LOCAL UNION 580, International Association of Bridge, Structural and Ornamental Iron Workers, et al., Respondents.

No. 93 Civ. 5440 (PKL).

United States District Court,
S.D. New York.

Feb. 8, 1995.

Ralph P. Katz, White Plains, NY (Ralph P. Katz, of counsel), for Active Glass Corp.

Colleran, O'Hara & Mills, Garden City, NY (James A. Brown, of counsel), for Local 580 and Local 580 Funds.

Donald L. Sapir, White Plains, NY (Donald L. Sapir, Scott A. Weiss, of counsel), for Carpenters Union.

Robert P. O'Brien, Mineola, NY (Robert P. O'Brien, of counsel), for Glaziers' Union.

### OPINION AND ORDER

LEISURE, District Judge:

Petitioner Active Glass Corp. ("Active") seeks a preliminary injunction to prevent a labor arbitration demanded by respondents Iron Union and the Iron Funds.[1] Active also

---

**1.** In order to simplify the process of citing parties, abbreviations will be employed. Architectural and Ornamental Iron Workers Local Union No. 580, International Association of Bridge, Structural and Ornamental Iron Workers will be referred to as "Iron Union." Trustees of the Local Union 580 of the International Association of Bridge, Structural and Ornamental Iron Workers Insurance Fund; Trustees of the Local Union 580 of the International Association of Bridge, Structural and Ornamental Iron Workers Pension Fund; Trustees of the Local Union 580 of the International Association of Bridge, Structural and Ornamental Iron Workers Vacation Fund; Trustees of the Local Union 580 of the International Association of Bridge, Structural and Ornamental Iron Workers Annuity Fund; Trustees of the Local Union 580 of the Interna-tional Association of Bridge, Structural and Ornamental Iron Workers Apprentice–Journeyman Educational Fund; Trustees of the Ornamental Institute of New York Fund; and Trustees of the Ironworking Industry Fund will be referred to collectively as the "Iron Funds." The Iron Funds and Iron Union will be referred to collectively as "Iron."

Glaziers Local Union 1087, International Brotherhood of Painters and Allied Trades will be referred to as "Glaziers Union," and its respective employee benefit funds will be referred to collectively as the "Glaziers Funds." Glaziers Union and the Glaziers Funds will be referred to collectively as "Glaziers." Finally, the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America will be referred to as "Carpenters Un-

seeks an order compelling Iron Union and the Iron Funds to participate in a multiparty arbitration along with the other named respondents: Glaziers Union, the Glaziers Funds, Carpenters Union, and the Carpenters Funds.

Iron Union and the Iron Funds cross-move for summary judgment to dismiss Active's petition and to compel Active to arbitrate their underlying grievance. In two separate motions, Carpenters Union and the Carpenters Funds move for summary judgment, as do Glaziers Union and the Glaziers Funds. Both seek dismissal of Active's petition, in its entirety, and also seek a denial of Iron Union's motion to compel arbitration with Active.

For the reasons stated below, Active's motion is denied; Iron's motion is granted; and Glaziers' motion and Carpenters' motion are granted in part and denied in part.

## BACKGROUND

Active is a contractor in the building and construction industry in and around New York City. Petitioner's Memorandum of Law in Support of its Motion for a Preliminary Injunction and in Opposition to Iron Workers Union's and Iron Workers Funds' Motion for Summary Judgment to Compel their Noticed Arbitration ("Active mem1")[2] at 1. Active and Iron Union were parties to a collective bargaining agreement (the "CBA") as well as a short term trust agreement which obligates the employer to make contributions to employee benefit funds at the rates prescribed in the CBA.[3] Memorandum of Law in Opposition to Petitioner's Motion for a Preliminary Injunction and in Support of Respondents', Local 580 and Lo-cal 580 Funds, Cross–Motion for Summary Judgment to Compel Arbitration ("Iron mem1") at 5. On or about January 19, 1993, an audit of Active was completed by the trustee's auditor, and Iron alleges that the auditor found, *inter alia,* that the Iron Funds were underpaid based on actual hours worked for Active by Iron Union. *Id.* Iron also asserts that the auditor found that Active owed additional contributions to the Iron Funds based on its failure to hire Iron Union members, in violation of the CBA. *Id.*

On or about July 13, 1993, after Active refused to make payment to the Iron Funds based on the findings of the audit, Iron served on Active a notice of intention to arbitrate the dispute. *Id.* On or about August 4, 1993, Active filed with this Court the instant petition, which seeks both an order requiring multiparty arbitration and a preliminary injunction preventing the labor arbitration demanded by Iron.[4] *Id.* In response, on or about August 20, 1993, Iron cross-moved for summary judgment dismissing Active's petition and seeking to compel Active to arbitrate.

Active alleges that the money sought by Iron has already been paid to the Carpenters Funds and the Glaziers Funds for work done by employees of Active. Active mem1 at 4. These employees were represented by Carpenters Union and Glaziers Union. *Id.* Active contends that the money was paid to those funds on the basis of representations made by Carpenters Union and Glaziers Union that the work involved was properly assigned to the employees represented by them. *Id.* at 5.

Finally, to complete the picture, Carpenters and Glaziers independently move this Court for summary judgment dismissing Ac-

---

2. The Court was treated to no fewer than thirteen memoranda of law from all of the parties to this action, and as many as five were received from a single party. As a consequence, the Court views the assignation of numbers to each party's briefs, in accordance with the date the brief was filed, as the easiest method to distinguish the various briefs.

ion," its respective employee benefit funds will be referred to collectively as the "Carpenters Funds," and Carpenters Union and the Carpenters Funds will be referred to collectively as "Carpenters."

3. Active is not now a party to any collectively bargained agreement with Iron Union. Active was a party to such agreements from January 1, 1989 through June 30, 1993. Active mem1 at 4.

4. Active seeks a stay of the arbitration noticed by Iron, in part, because it hopes that such a stay will afford it an opportunity to institute a jurisdictional dispute proceeding before the National Labor Relations Board ("NLRB").

tive's petition to compel multiparty arbitration and also denying Iron's motion for summary judgment compelling bilateral arbitration.

In essence, there are currently four motions pending before the Court. Active moves to compel multiparty arbitration and to stay bilateral arbitration with Iron; Iron moves to compel bilateral arbitration; and Carpenters and Glaziers move to dismiss all arbitration.

## DISCUSSION

### I. *Arbitration Agreement Between Iron and Active*

#### A. *The Standard*

The threshold question before this Court is whether an arbitration agreement was entered into between Iron and Active that encompasses the instant dispute. Absent such an agreement, neither multiparty nor bilateral arbitration is proper. "The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (1988), requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation."[5] *Deloitte Noraudit A/S v. Deloitte Haskins & Sells,* 9 F.3d 1060, 1063 (2d Cir.1993). "In determining the arbitrability of a particular dispute, a court must decide 'whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims.'" *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,* 991 F.2d 42, 45 (2d Cir.1993) (quoting *David Threlkeld & Co. v. Metallgesellschaft Ltd.,* 923 F.2d 245, 249 (2d Cir. 1991)). Further, "'"[t]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."'" *McDonnell Douglas Finance Corp. v. Penn-*

*sylvania Power & Light Co.,* 858 F.2d 825, 830 (2d Cir.1988) (emphasis in original) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.* 815 F.2d 840, 844 (2d Cir.1987) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985))).

■ Courts will not force parties into arbitration when it was clearly not their intention to place a given matter under the province of an arbitration agreement. *See Chevron U.S.A., Inc. v. Consolidated Edison Co.,* 872 F.2d 534, 537 (2d Cir.1989). This Court has stated that "[i]t is fundamental that arbitration agreements are creatures of contract law." *Scher v. Bear Stearns and Co.,* 723 F.Supp. 211, 214 (S.D.N.Y.1989). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. . . . [A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).

Once a court has determined that an arbitration clause exists, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). In fact, "[t]he existence of an arbitration clause in [an agreement] raises a presumption of arbitrability that can be overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Associated Brick Mason Contractors, Inc. v. Harrington,* 820 F.2d 31, 35 (2d Cir.1987) (quoting *AT & T Technologies, Inc. v. Communications Workers of*

---

5. Even if the FAA does not directly apply to employment contracts or collective bargaining agreements, the policy in favor of enforcing arbitration agreements is still clear. *Cf. Local 201, United Association of Journeymen & Apprentices*

*of Plumbing & Pipefitting Industry v. Shaker, Travis & Quinn, Inc.,* 555 F.Supp. 314, 316 (S.D.N.Y.1983) (national policy favoring resolution of labor disputes by arbitration).

*America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)); *see also Kerr–McGee Refining Corp. v. M/T Triumph,* 924 F.2d 467, 469 (2d Cir.1991).

B. *The Existence of an Agreement to Arbitrate*

■ The duty to arbitrate arises from the CBA entered into between Iron and Active. Article XXII of Iron Union's CBA with Active provides in pertinent part:

> (a) Any grievance, complaint or dispute between the Union and the Employer arising out of this Agreement, or as to the meaning, interpretation, application or alleged violation of any provision or provisions of this Agreement shall be handled in the first instance by an officer of the Union designated by the Union and a representative of the Employer involved who is a member of the Association.
>
> (b) [If (a) is unsuccessful then designees of the Union and the Association will try to resolve the dispute]
>
> (c) If the designees of the Union and the Association fail to reach agreement within three (3) work days after they meet, as provided above, the grievance, complaint, or dispute shall be submitted for final and binding determination to Hon. Walter L. Eisenberg, as the Impartial Arbitrator.
>
> (f) The foregoing provisions for arbitration are not intended and shall not be construed as in anywise [sic] qualifying or making subject to change any provisions of this Agreement including, but not limited to the handling of negotiations for a new Agreement, change in wage scale or jurisdictional disputes.

Notice of Cross–Motion for Summary Judgment at ex. B, Article XXII.

Article XXXI of Iron Union's CBA with Active provides in pertinent part:

> (f) In the event a dispute arises in connection with the failure of an Employer to make the required payments to any of the Funds as specified in Sections XXII, XXIV, XXV, XXVI, XXVII, XXIX, and XXX, or in connection with any of the provisions of this Section XXXI, or in connection with any rule or procedure of the

Trustees of any of the Funds affecting collection of contributions to the Funds or distribution of receipts to employees, such dispute shall be submitted to Hon. Walter L. Eisenberg, as the Impartial Arbitrator.

Notice of Cross–Motion for Summary Judgment at ex. B, Article XXXI.

Article I of Iron Union's CBA with Active provides in pertinent part:

> It is agreed that the jurisdiction of work covered by this Agreement is that provided for in the charter grant issued by the American Federation of Labor to the International Association of Bridge, Structural and Ornamental Iron Workers, it being understood that the claims are subject to trade agreements as well as the decisions and awards rendered by the Building Trades Employers' Association of the City of New York made pursuant to the Joint Trade Arbitration Plan of the New York Building Trades adopted July 9, 1903 with respect to all jurisdictional disputes which may arise under this Agreement.

Notice of Cross–Motion for Summary Judgment at ex. B, Article I.

As noted above, there is a general policy in favor of arbitration, and when, as in the instant case, the agreement between the parties contain provisions providing for arbitration, they are construed broadly. Article XXXI of the CBA provides for the arbitration of disputes arising from the failure of Active to make payments to the Funds. Article XXII of the CBA arranges for the arbitration of all disputes arising out of the CBA, subject to certain constraints. Specifically, Article XXII is not to be interpreted in a way that qualifies or changes the provisions of the CBA that concern jurisdictional disputes.

The section of the CBA that discusses jurisdictional disputes is Article I. That section states that the jurisdiction of the work covered by the CBA is that provided in a particular charter grant, and that claims are subject to certain decisions and awards rendered by the Building Trade Employers' Association of the City of New York with respect to all jurisdictional disputes which may arise under the CBA. Article I, however, does not require the non-arbitration of jurisdictional issues. It merely specifies that jur-

isdictional claims are subject to certain limitations. This may place a constraint on the range of options open to an arbitrator, but it should not be construed as precluding all arbitration of jurisdictional issues.

The Court finds that Article XXXI and Article XXII clearly provide for arbitration of all disputes arising from the CBA, and it may not be said with positive assurance that the impact of Article I is to render the arbitration clauses not susceptible of an interpretation that covers the asserted dispute. *Cf. Associated Brick Mason Contractors*, 820 F.2d at 35. In sum, interpreting the arbitration provision of Article XXII of the CBA broadly and interpreting the limiting provision of Article I narrowly, as this Court must, the Court finds that the dispute between Iron and Active is encompassed within the terms of their arbitration agreement.

Active never argues to the contrary. Rather, it conclusorily asserts that there is an issue as to whether the arbitration provisions encompass all of the issues sought to be arbitrated, and that this issue must be determined by a jury. Active mem1 at 9. Only two paragraphs earlier, however, Active asserts that "[t]he determination of whether the issues sought to be arbitrated fall within the scope of the arbitration provisions is for the Court to decide." *Id.* at 8. Active cites a number of cases for this proposition,[6] and it is correct. This Court finds that the issues which Iron seeks to arbitrate fall within the arbitration provisions of the CBA.

Finally, Active asserts that the noticed arbitration should be stayed because there is no agreement to arbitrate for part of the period for which the arbitration has been noticed. Active notes that there is no longer a CBA in effect between Iron and itself. Active then summarily states that there is an issue of fact as to whether there is an agreement to arbitrate for part of the period noticed by Iron. Active provides no support for its statement, however, and presents nothing but the conclusory assertion itself. Active does not dispute that collective bargaining agreements were in effect for the period from January 1, 1989 through June 30, 1991, and it is only disputes that arose during this time period which Iron seeks to arbitrate. Reply Memorandum of Law in Opposition to Petitioner's Motion for a Preliminary Injunction and in Support of Respondents' Local 580 and Local 580 Funds, Cross–Motion for Summary Judgment to Compel Arbitration ("Iron mem2") at 8. Consequently, this Court finds that there is no material issue of fact concerning whether the dispute between Iron and Active is arbitrable. It is.

## C. Statute of Limitations

Carpenters Union argues that this Court should deny the arbitration sought by Iron because Iron's noticed arbitration is barred as untimely. The Court will not address this issue in detail because Active does not assert that Iron is time-barred. Although this Court compels arbitration of the instant dispute, for the reasons stated below, the arbitration is not to include Carpenters or Glaziers. Neither Active nor Iron address the timeliness issue, and this Court finds that, to the extent the timeliness of the arbitration sought by Iron is an issue at all, it was waived by Active.[7] Consequently, this Court will not stay the noticed bilateral arbitration between Iron and Active as untimely.

## II. Multiparty Arbitration

■ The most heavily contested issue, in the group of motions in the instant action, is whether the Court can and should require Iron, Carpenters, Glaziers and Active to participate in multiparty arbitration. Active ar-

---

6. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *International Union of Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); and *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

7. Active only addresses the statute of limitations issue to the extent that timeliness is a factor in its own attempt to include Carpenters and Glaziers in the arbitration with Iron. In less than a page, Active simply argues that such arbitration was not time-barred. *See* Active's Reply to Carpenter Union's and Carpenters Funds' Letter Brief Dated September 17, 1993 ("Active mem4") at 1–2.

gues in favor of multiparty arbitration. The chief impetus for its argument is, simply stated, that "[t]he money sought by the Iron Workers has already been paid to the Carpenters Funds and to the Glaziers Funds for work done by employees of Active represented, respectively, by the Carpenters Union and the Glaziers Union." Active mem1 at 4. Active's plight is clear. It is concerned that undertaking separate bilateral arbitrations with Iron and with Carpenters and Glaziers may result in inconsistent outcomes.

Glaziers and Carpenters are clearly implicated by Iron's assertion that Active performed work within Iron's contractual craft jurisdiction without using its members. *See* Iron mem1 at 3. Active maintains that the employees who performed and were compensated for the work that Iron alleges should have been assigned to it, were members of Carpenters Union and Glaziers Union. Glaziers and Carpenters contend that this Court does not have subject matter jurisdiction to compel an arbitration among Iron, Active, Carpenters and Glaziers. They note the " 'duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede a judicial determination that the collective bargaining agreement does in fact create such a duty.' " Carpenters' Memorandum of Law in Support of Motion for Summary Judgment and in Opposition to Ironworkers' Counterclaim to Compel Arbitration ("Carpenter mem1") at 2 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964)).

Article XII of Carpenter Union's CBA with Active provides in pertinent part:

Section 1. All complaints, disputes and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event there shall exist any claim, demand, dispute or controversy between the parties hereto, excluding the merits of jurisdictional dispute, i.e., a dispute with another trade over the assignment of work, the parties hereto shall first attempt to settle and adjust such dispute, claim, demand or controversy by negotiation.

Section 2. Any grievance not resolved shall be submitted to arbitration ...

Affidavit of Donald L. Sapir, dated September 10, 1993, at ex. A, Article XII.

Section 23 of Glazier Union's CBA with Active provides in pertinent part:

A. Except as herein otherwise provided in Section 1C of this agreement [dealing with jurisdictional disputes], all complaints, disputes or grievances arising between the parties hereto with respect to any of the terms of this Agreement shall be submitted in writing by the party claiming to be aggrieved to a Joint Trade Board to be established and consisting of the President of the Window and Plate Glass Dealers Association of New York or his designee and the Business Manager of the Union and his designee.

C. After hearing the evidence presented, the Joint Trade Board shall make a determination on the question presented. In the event of a deadlock or failure to reach agreement, at the request of either the Employer or the Union, the matter shall be submitted to an Arbitrator to be selected by the American Arbitration Association.

Notice of Motion for Summary Judgment, dated September 15, 1993, at ex. B, section 23.

Carpenters and Glaziers both assert that they have no dispute with Active. Carpenters mem1 at 3; Glaziers' Union's and Supplementary Fund's Memorandum of Law in Support of Motion for Summary Judgment and in Opposition to Iron Worker's Motion for Summary Judgment to Compel Arbitration, ("Glaziers mem1") at 2. This argument is unavailing because Active does have a dispute with Carpenters and Glaziers. For a dispute to exist, it is not necessary that both parties are troubled. In fact, it is very often the case that one party is quite pleased with the status quo, and it is only the other party that "has a dispute." This Court, therefore, is unpersuaded by Carpenters' and Glaziers' argument that no dispute exists concerning the agreements between them and Active simply because neither of them has a grievance with Active.

Moreover, the present controversy squarely arises from the terms of those agreements. If, in any other situation, Active believed that it had overpaid Carpenters or Glaziers, such a dispute clearly would be arbitrable. This outcome is not altered by the fact that Active allegedly simultaneously overpaid Carpenters and Glaziers and underpaid Iron, or by the fact that it was Iron which brought the purported error to Active's notice.

The question remains, however, whether this Court can require Carpenters and Glaziers to participate in multiparty arbitration with Iron and Active. Active urges that this Court can and should mandate multiparty arbitration, and cites *Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Association*, 414 F.2d 1326, 1327–1328 (2d Cir.1969) for the proposition that this Court can direct parties to engage in multiparty arbitration, even in the absence of an agreement to do so. In that case, the court concluded that the district court had jurisdiction to compel tripartite arbitration and could order the consolidation of two separate arbitration proceedings.

The Second Circuit, however, has recently made clear that "a district court cannot order consolidation of arbitration proceedings arising from separate agreements to arbitrate absent the parties' agreement to allow such consolidation." *Government of U.K. of Gr. Brit. v. Boeing Co.*, 998 F.2d 68, 69 (2d Cir.1993).[8] In that case, the Second Circuit overruled its holding in *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir.1975), *cert. denied*, 426

U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976), and made clear that "[t]he district court is without authority to consolidate the two actions based upon the mere fact that the disputes contain similar or identical issues of fact and law." [9] *Boeing*, 998 F.2d at 70. The Second Circuit further states, "we now hold that the FAA does not authorize consolidation of arbitration proceedings unless doing so would be in accordance with the terms of the agreement." *Id.* at 71 (citations omitted). The Second Circuit notes that "[e]ach of our sister courts to have considered the question since [certain Supreme Court decisions] has held that district courts do not have the authority under the FAA to consolidate arbitrations absent the parties' consent." *Id.* at 72.[10]

The arbitration provisions of Carpenters' CBA with Active and Glaziers' CBA with Active, quoted above, nowhere provide for multiparty arbitration, nor do they anywhere consent to such consolidated arbitration. Consequently, this Court finds that Carpenters and Glaziers cannot be required to participate in the multiparty arbitration requested by Active.

Active notes that *Boeing* states that "[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation, *at least absent a countervailing policy manifested in another federal statute.*" *Id.* (emphasis added). Active

---

**8.** The Court also notes that the facts in *Columbia* were different from the facts in the instant case where the work has already been performed, there is no risk of imminent labor unrest, and the only peril is that Active may be forced to pay twice for the same work.

**9.** "We reverse the judgment of the District Court granting the United Kingdom's Petition to Compel Consolidated Arbitration and we hold that the district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate, absent the parties' agreement to allow such consolidation. To the extent our decision in *Nereus* is based on the Federal Arbitration Act, we hold that it is no longer good law." *Boeing* at 74.

**10.** *See also Coastal Shipping, Ltd. v. Southern Petroleum Tankers, Ltd.*, 812 F.Supp. 396, 402

(S.D.N.Y.1993) ("absent an agreement to consolidate disputes, federal courts are powerless to compel consolidation.... In determining whether to consolidate arbitrations, a court engages in a two-step process. First, the court must find that the parties have agreed to arbitrate.... Second, a court must determine whether that agreement encompasses an agreement to consolidate arbitration claims either directly or by implication."); *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 856 F.Supp. 850, 853 (S.D.N.Y.1994) ("[t]he rule in this circuit now is that the district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate, absent the parties' agreement to allow such consolidation." (citations omitted)).

contends that the instant case is "precisely a case where 'a countervailing policy [has been] manifested in another federal statute.'" Active mem1 at 14. Active argues that sections 158(b)(4)(D) and 160(k) of Title 29 of the United States Code manifest the clear policy of the United States Government to have jurisdictional disputes heard and determined by an agency of the federal government, the National Labor Relations Board, unless the parties agree upon methods for the voluntary adjustment of the dispute. *Id.* Active concludes that, in furtherance of this federal policy, the Court has jurisdiction to preserve the situation so as to enable the petitioner to bring the matter before the National Labor Relations Board.

This Court, however, remains unpersuaded and will not stay the arbitration noticed by Iron in order to permit Active to file an administrative charge with the National Labor Relations Board. If Active believed that the instant dispute was a jurisdictional one within the meaning of the National Labor Relations Act, it could have filed a timely charge with the National Labor Relations Board. Moreover, this Court does not find that the National Labor Relations Act expressed a policy against arbitration. Active mistakes the focus of *Boeing*, which is to rigorously enforce arbitration agreements even if such enforcement results in piecemeal litigation. This Court, finds that Active cannot escape its arbitration agreement with Iron, nor can it require Carpenters and Glaziers to participate in that arbitration without their consent.

### CONCLUSION

For the reasons stated above, Active's motion for a preliminary stay of the arbitration noticed by Iron is denied; Iron's motion to compel the noticed arbitration is granted; Carpenters' and Glaziers' motions for summary judgment are granted to the extent that they seek the denial of Active's motion and denied to the extent that they seek the denial of Iron's motion.

**SO ORDERED.**