**UNITED STATES POSTAL SERVICE, Appellee**

v.

**NATIONAL RURAL LETTER CARRIERS' ASSOCIATION, Appellee**

and

**National Association of Letter Carriers, AFL–CIO, Appellant.**

**No. 90–5267.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 5, 1991.

Decided March 20, 1992.

Keith E. Secular, New York City, for appellant.

Stephen E. Alpern, Atty. U.S. Postal Service, with whom Jay B. Stephens, U.S. Atty., John D. Bates, R. Craig Lawrence, and Susan A. Nellor, Asst. U.S. Attys., and Edward F. Ward, Jr., Asst. Gen. Counsel, and Kevin B. Rachel, Sr. Atty., U.S. Postal Service, Washington, D.C., were on the brief, for appellee, U.S. Postal Service.

William B. Peer, Washington, D.C., for appellee, Nat. Rural Letter Carriers' Ass'n.

Before: MIKVA, Chief Judge, SILBERMAN and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

The National Association of Letter Carriers (NALC) appeals from a decision by the district court ordering it to submit a craft jurisdictional dispute over mail delivery assignments to tripartite arbitration before a panel of two arbitrators, one chosen by each union involved in the dispute. NALC contends that the district court lacked power to order tripartite arbitration because the parties could not agree on a common arbitrator. We uphold the district court's decision. Under section 1208(b) of the Postal Reorganization Act, the analog to section 301 of the Labor–Management Relations Act, federal courts have the power to enforce collective bargaining agreements, including agreements to submit to arbitration, using principles of federal common law. Because both unions are bound by collective bargaining agreements with

the Postal Service that require arbitration of the jurisdictional dispute, the district court had the authority to enforce those agreements by ordering tripartite arbitration and fashioning a dual arbitrator system to satisfy both parties' demand that their own arbitrator resolve the dispute.

## I. BACKGROUND

On March 30, 1989, NALC, which represents city letter carriers, initiated a national level grievance with the Postal Service claiming that its city letter carriers were entitled to deliver mail in the Oakton and Vienna areas of Virginia. At the time, the Postal Service assigned mail delivery work in those areas to rural carriers who are represented by the National Rural Letter Carriers' Association (NRLCA). Both NALC and NRLCA have collective bargaining agreements with the Postal Service that require grievances involving interpretations of the agreements to be resolved through arbitration. Under both contracts, the parties choose their arbitrators from established national panels, but neither union is a party to the other's collective bargaining agreement.

When the Postal Service denied NALC's grievance, NALC and the Postal Service agreed to submit the matter to arbitration before Arbitrator Richard Mittenthal, one of the arbitrators listed on NALC's national panel. Apparently, due to a decision in a similar arbitration involving NALC and NRLCA, NALC did not object to NRLCA's participation in the arbitration process. At this point, however, NRLCA chose not to intervene because it did not want to submit to arbitration before an arbitrator not of its own choosing. Instead NRLCA sought a temporary restraining order compelling tripartite arbitration before an arbitrator other than Mr. Mittenthal. The temporary restraining order was denied and the arbitration hearing went forward without NRLCA's participation. *National Rural Letter Carriers' Ass'n v. National Ass'n of Letter Carriers, AFL–CIO*, No. 89–3098, slip op. at 1 (D.D.C. Nov. 14, 1989).

At the completion of the first stage of arbitration, the Postal Service and NALC

postponed further hearings in order to give the Postal Service an opportunity to compel NRLCA to participate. The Postal Service then filed this action in the United States District Court for the District of Columbia against both NRLCA and NALC seeking an order compelling tripartite arbitration between the Postal Service, NALC, and NRLCA. In response, NALC filed a motion to compel bipartite arbitration between itself and the Postal Service and NRLCA moved to align itself with the Postal Service as a plaintiff, stating that it would participate in tripartite arbitration only if it took place before an arbitrator other than Mr. Mittenthal alone.

The district court granted the Postal Service's motion for summary judgment, ordering both unions to submit to tripartite arbitration. Citing *Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Association*, 414 F.2d 1326 (2d Cir.1969), the district court held that it had authority to compel tripartite arbitration where both parties are subject to collective bargaining agreements that have arbitration provisions. *United States Postal Serv. v. National Rural Letter Carriers Ass'n*, 758 F.Supp. 743, 745 (D.D.C.1990). The court distinguished a recent Sixth Circuit decision refusing to order tripartite arbitration in a similar case, *see United Indus. Workers v. Kroger Co.*, 900 F.2d 944 (6th Cir.1990), pointing out that the nonconsenting union in *Kroger* had not initiated the grievance procedures leading to arbitration and, therefore, the requisite "contractual nexus" between the parties did not exist. In this case, the court observed, both unions had collective bargaining agreements that required arbitration and NALC initiated its arbitration procedures by filing a grievance claiming that the Postal Service breached its agreement with the Union. *USPS v. NRLCA*, 758 F.Supp. at 746.

Having determined that it had authority to compel tripartite arbitration, the district court then chose two arbitrators: Mr. Mittenthal, NALC's arbitrator, and Nicholas Zumas, an arbitrator chosen by NRLCA. By this choice, the court reasoned, NALC

did not lose its choice of arbitrators while NRLCA gained the opportunity to resolve the dispute before one of its arbitrators. NALC now appeals the district court's order, arguing that the district court lacked authority to order tripartite arbitration because the parties could not agree on the identity of a common arbitrator.

## II. ANALYSIS

### A. *Standard of Review*

We review a grant of summary judgment *de novo* to determine that no genuine issue of material fact exists and to ensure that the district court properly applied the relevant law to the undisputed facts. *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C.Cir.1990). In this case we must satisfy ourselves that the district court did, in fact, possess the authority to compel tripartite arbitration before the two arbitrator panel that it designated.

### B. *The Authority to Order Tripartite Arbitration*

■ Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b), gives federal district courts jurisdiction over suits for violations of contracts between the United States Postal Service and unions representing postal employees. Section 1208(b) is virtually identical to section 301(a) of the Labor–Management Relations Act (LMRA), 29 U.S.C. § 185(a), which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties." We have previously applied cases interpreting section 301(a) in determining the scope of section 1208(b). *National Ass'n of Letter Carriers v. United States Postal Serv.*, 590 F.2d 1171, 1174–75 (D.C.Cir.1978).

In *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957), the Supreme Court interpreted section 301 of the LMRA as authorizing federal courts to fashion a body of federal common law for suits arising under section 301. The *Lincoln Mills* Court recognized that while some substan-

tive law would be found in the LMRA itself, other law must be developed by looking to national labor policy and creating a remedy that effectuates that policy. *Id.* at 457, 77 S.Ct. at 918. "The range of judicial inventiveness will be determined by the nature of the problem." *Id; see also* James E. Pfander, *Judicial Purpose and the Scholarly Process: The* Lincoln Mills *Case,* 69 Wash.U.L.Q. 243 (1991) (describing the *Lincoln Mills* case and examining legislative history behind section 301 that supports the Court's decision).

Several courts have used their authority under section 301 to compel tripartite arbitration in cases where the collective bargaining agreements at issue did not explicitly require it. In *Columbia Broadcasting*, the court ordered tripartite arbitration to settle a work assignment dispute between two unions. Relying on the Supreme Court's decision in *Transportation–Communication Employees Union v. Union Pacific Railroad*, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), the Second Circuit held that, under its authority to create a body of common law governing labor contracts, it could compel tripartite arbitration where both parties were subject to a collective bargaining agreement with the same employer and both contracts had similar provisions requiring arbitration of work assignment disputes. *Columbia Broadcasting*, 414 F.2d at 1328–29.

Three other circuits have followed the Second Circuit's lead in *Columbia Broadcasting, see Retail, Wholesale & Dep't Store Union, Local 390 v. Kroger*, 927 F.2d 275 (6th Cir.1991); *United States Postal Serv. v. Am. Postal Workers Union*, 893 F.2d 1117 (9th Cir.1990); *Local No. 850, Int'l Ass'n of Machinists & Aerospace Workers v. T.I.M.E.–D.C., Inc.*, 705 F.2d 1275 (10th Cir.1983), and no court of appeals has held that courts lack the authority to order tripartite arbitration in all circumstances. NALC offers no persuasive reason why we should depart from this growing consensus.

■ A court's discretion to order tripartite arbitration, however, is not unbounded.

A party cannot be forced to arbitrate a dispute absent an agreement to do so. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Arbitration is a matter of consent; "it will not be imposed upon parties beyond the scope of their agreement." *Litton Fin. Printing Div. v. NLRB*, —— U.S. ——, 111 S.Ct. 2215, 2222, 115 L.Ed.2d 177 (1991).

■ Typically, courts have the authority to compel tripartite arbitration only where there is a "contractual nexus" as to the parties and the subject matter. *USPS v. APWU*, 893 F.2d at 1120. Such a nexus exists when each union is bound by a collective bargaining agreement with its employer that requires arbitration of the dispute at issue. *Id; Local 390 v. Kroger*, 927 F.2d at 278–79. Furthermore, when the agreements require it, a court will not order tripartite arbitration unless each party invokes its agreement's arbitration provision by filing a grievance. *USPS v. APWU*, 893 F.2d at 1121; *see also United Industrial Workers v. Kroger*, 900 F.2d 944, 947 (D.C.Cir.1990) (court could not compel arbitration when union had not yet filed grievance challenging the disputed conduct because union's collective bargaining agreement with employer provided only for arbitration of issues on which grievance had been filed and grievance procedure had been followed).

In this case, NALC and NRLCA have similar collective bargaining agreements with the Postal Service that provide for arbitration of disputes over interpretations of the agreements. *See* USPS–NALC Agreement, Art. 15, § 3(D); USPS–NRLCA Agreement, Art. 15, § 4(D). Furthermore, NALC invoked its arbitration provision by filing a grievance over the work assignment dispute with the Postal Service. And while NRLCA has not yet filed a grievance, it has sufficiently invoked its arbitration provision by seeking a temporary restraining order, moving to align itself as a plaintiff in this case, and arguing throughout the proceeding that tripartite arbitration is the proper resolution of this dispute. *See USPS v. APWU*, 893 F.2d at

1121 (union's attempt to intervene in arbitration proceeding was essentially an invocation of its arbitration agreement especially where union could not invoke grievance procedures until it actually lost the disputed work). Under these circumstances, the requisite contractual nexus is present and, therefore, the district court had the authority to compel tripartite arbitration.

The question remains, however, whether that power was properly exercised. Both the Second and Ninth Circuits have identified one factor potentially weighing against tripartite arbitration—namely, the interest of each party in appearing before its chosen arbitrator. *USPS v. APWU*, 893 F.2d at 1121; *Columbia Broadcasting*, 414 F.2d at 1329. NALC contends, largely on the basis of the Sixth Circuit's decision in *United Industrial Workers*, that the district court lacked the power to order tripartite arbitration because both parties did not agree on a common arbitrator. But the court in *United Industrial Workers* refused to compel tripartite arbitration because the requisite contractual nexus between the parties and the subject matter was absent. *United Industrial Workers v. Kroger*, 900 F.2d at 947. The court's suggestion that a party cannot "be bound by the decision of an arbitrator chosen in contravention of the procedure outlined in its collective bargaining agreement ... absent its consent," *see id.* at 948, was at most an alternative holding.

NALC's primary objection to the dual arbitrator system created by the district court is that it requires arbitrator Zumas to interpret NALC's collective bargaining agreement. According to NALC, the district court's order does "substantial violence to the foundation of voluntary arbitration" by allowing Mr. Zumas to interpret an agreement that he was never asked to interpret. Of course, NRLCA stands in the same position as NALC. Under the district court's plan, Mr. Mittenthal, NALC's arbitrator, will have to interpret NRLCA's collective bargaining agreement (and we note that NRLCA appears to have no objection to this).

More important, a collective bargaining agreement is more than an ordinary contract between two private parties. It is a "generalized code to govern a myriad of cases," covering the entire employment relationship, that the drafters of the agreement could not anticipate. *Transportation–Communication Employees,* 385 U.S. at 161, 87 S.Ct. at 371. In interpreting these agreements "it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements. This is particularly true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments." *Id.*

■ In this case, Mr. Zumas will not interpret NALC's collective bargaining agreement alone, but rather in tandem with Mr. Mittenthal, NALC's handpicked arbitrator. Any harm that could befall NALC from having Mr. Zumas interpret its collective bargaining agreement could equally befall NRLCA from having Mr. Mittenthal interpret its agreement. Furthermore, NALC has not suggested any alternative that better serves the principles of voluntary arbitration. In light of these considerations as well as Congress' strong policy in favor of settling labor disputes through arbitration, we are convinced that the district court did not abuse its discretion in ordering tripartite arbitration under a dual arbitrator system.

We note that a potential difficulty exists in the district court's dual arbitrator solution—the arbitrators may reach an impasse. If that turns out to be the case, the district court may have to appoint a neutral arbitrator to solve the dispute. *See Local 390 v. Kroger,* 927 F.2d at 279 (approving an alternative approach of appointing an entirely new, neutral arbitrator).

### III. Conclusion

Several other circuits have recognized that, under principles of federal common law, a court has the authority to order tripartite arbitration of a dispute between two unions and their employer where both unions are subject to a collective bargaining agreement with the employer and both agreements contain similar provisions requiring arbitration of the dispute. We hold today that, where such a contractual nexus exists, the district court is not precluded from ordering tripartite arbitration merely because the two unions cannot agree on a common arbitrator. The district court's dual arbitrator solution might well resolve the dispute quickly and fairly. And while there is a possibility that the district court may have to appoint a new arbitrator if the two arbitrators cannot agree, we do not think that the court abused its discretion in creating the dual arbitrator scheme. Accordingly, the decision of the district court is

*Affirmed.*