**EMERY AIR FREIGHT CORPORATION, d/b/a Emery Worldwide, a CNF Company, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 295; International Brotherhood of Teamsters, Local 478; and The American Arbitration Association, Defendants.**

No. 98–CV–3624–(FB).

United States District Court, E.D. New York.

Oct. 8, 1998.

<hr />

**314**

Heather Boshak, Grotta, Glassman & Hoffman, New York City, and Donald T. O'Connor, Buchanan Ingersoll, P.C., Pittsburgh, PA, for plaintiff.

Andrew S. Hoffman, Wiseman, Hoffman & Walzer, New York City, for Defendant International Brotherhood of Teamsters, Local 295.

Ira Cure, Kennedy, Schwartz & Cure, New York City, and Raymond G. Heineman, Kroll & Heineman, West Orange, New Jersey, for Defendant International Brotherhood of Teamsters, Local 478.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

Plaintiff Emery Air Freight Corporation, d/b/a Emery Worldwide, a CNF Company ("Emery"), seeks to compel defendants International Brotherhood of Teamsters, Local 295 ("Local 295") and International Brotherhood of Teamsters, Local 478 ("Local 478") to participate in tripartite arbitration. Both unions have claimed that certain specified work should properly be assigned by Emery to their members. While Local 295 agrees to the tripartite arbitration, Local 478 does not, contending that, by virtue of a 1997 arbitration award, its members are entitled to the work. As will be set forth more fully below, the Court believes that it has the power in this muddled area of the law to order tripartite arbitration but chooses, in the exercise of its discretion, not to do so in this case.

### BACKGROUND

The material facts of this controversy are not in dispute. Emery, a Delaware corporation, transports freight by air and truck, including the hauling of freight between John F. Kennedy International Airport ("Kennedy Airport") in Queens, New York and Newark International Airport ("Newark Airport") in

Newark, New Jersey. Emery and Local 295 are parties to a collective bargaining agreement ("Local 295 CBA") that covers work performed by truck drivers and dock workers employed by Emery on Long Island and in the Boroughs of Brooklyn, Queens and the Bronx. The Local 295 CBA sets forth a grievance procedure that relates to, *inter alia*, "any dispute or grievance ... between the employer and the union, as to the meaning, import and application of, or compliance with the provisions of [the Local 295 CBA]." Complaint, at Exh. "A," pg. 23. In the event that a grievance is not resolved internally within 45 working days, Local 295 may seek arbitration from the American Arbitration Association ("AAA"). The agreement does not provide for tripartite arbitration of work assignment disputes.

Emery is also a party to a collective bargaining agreement with Local 478 ("Local 478 CBA"), which covers work performed by truck drivers and dock workers employed by Emery in Northern New Jersey. The Local 478 CBA contains a grievance procedure, similar to Local 295's CBA, regarding "any disputes ... between [Emery] and the employees, or [Emery] and the Union concerning the application or interpretation of any provision of [the Local 478 CBA], or concerning any term or condition of employment set forth in this agreement." Complaint at Exh. "B," pg. 27. Like the Local 295 CBA, it also provides for arbitration in the event that a grievance is not internally resolved. If the parties are unable to agree upon an arbitrator, the dispute is to be submitted to the New Jersey Board of Mediation for appointment of an arbitrator. The Local 478 CBA also does not provide for tripartite arbitration of work assignment disputes.

In 1996, Local 478 filed a grievance with Emery claiming that certain hauling work between Kennedy Airport and certain sites in New Jersey should have been assigned to Local 478. Local 478 argued, *inter alia*, that Emery had improperly assigned shuttle work between Newark and Kennedy Airports to non-union personnel. Local 478 and Emery reached a partial settlement of its dispute, agreeing that certain freight shipped by Sony Corporation from Kennedy Airport to its headquarters in Cranbury, New Jersey would be assigned to Local 478. In a decision and award dated September 19, 1997 ("arbitration award"), the arbitrator sustained the balance of Local 478's grievance, determining that Emery had violated the Local 478 CBA by contracting out bargaining unit work between Kennedy and Newark Airports to non-union workers and that the shuttle work should be assigned to Local 478.

On April 29, 1998, Local 295 filed a demand for arbitration with the AAA. It claimed that certain work functions, including the Kennedy–Newark shuttle work and "certain JFK Airport pickups and drops," Complaint, at Exh. "D," should be assigned to Local 295 workers. On May 6, 1998, the AAA sent a list of prospective arbitrators to Emery for its review.

On May 14, 1998, Emery commenced this action pursuant to § 301(a) of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185(a) [1], and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"),[2] claiming that its obligations resulting from its prior arbitration with Local 478 were inconsistent with the relief now sought by Local 295 in its incipient arbitration. In its prayer for relief, Emery's complaint seeks: (1) a restraining order enjoining the

1. This section of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

2. The FAA, by its own terms, does not apply to "contracts of employment of ... workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. It would thus appear that the Arbitration Act is not applicable to the collective bargaining agreements at issue here. However, in appropriate circumstances, "the federal courts have often looked to the [FAA] for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the [LMRA] ... empowers the federal courts to fashion rules of federal common law to govern '[s]uits for violation of contracts between an employer and a labor organization' under the federal labor laws." *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)).

requested bipartite arbitration between Local 295 and Emery from proceeding; and (2) an order directing Emery, Local 295 and Local 478 to engage in tripartite arbitration to resolve the following question:

Should the following work be assigned to employees of Emery who are represented by Local 295 or to employees of Emery who are represented by Local 478:

(i) Pick up and delivery of Sony freight directly between John F. Kennedy Airport and Sony's facility near Trenton, New Jersey;

(ii) Linehaul (that is "shuttle") work which originates at John F. Kennedy Airport and terminates at Newark International airport; and

(iii) Pickup and delivery of freight directly between John F. Kennedy Airport and points in and around the Newark International Airport area?

Complaint at ¶ 16(b).

Simultaneously with the filing of its complaint to compel tripartite arbitration of this jurisdictional work assignment dispute and to enjoin the contemplated bipartite arbitration, Emery obtained an Order to Show Cause (Gleeson, J.) seeking such relief on an expedited basis.[3] The Order also temporarily restrained Local 295 and the AAA, which is also joined as a defendant, from proceeding with the bipartite arbitration pending the return date. Local 478 has filed papers in opposition to the Order to Show Cause, addressing the merits of the tripartite arbitration issue, but, to date, has not filed an answer to the complaint. The AAA has neither filed opposition papers in response to the Order to Show Cause nor answered the complaint.

On June 1, 1998, the Court heard oral argument on the Order to Show Cause. At that time, counsel for Local 295 agreed to participate in tripartite arbitration, *see* Transcript of Order to Show Cause, June 1, 1998 ("Transcript"), at pg. 5, and also agreed to a stay of its arbitration pending the Court's resolution of the issues raised by this case.

Transcript at pg. 16. Local 478 declined to participate in tripartite arbitration, however, maintaining that it has an enforceable arbitration award that entitles its members to the disputed work, and that until Emery either fails to comply with the arbitration award or is confronted with a conflicting award, the issue of tripartite arbitration is not ripe for judicial determination.

## DISCUSSION

### I. The Concept of Tripartite Arbitration of Work Assignment Disputes—The *CBS* Case

Preliminarily, Local 478 argues that the Court lacks subject matter jurisdiction over the parties' dispute. This argument, however, is without merit. In *Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Ass'n,* 414 F.2d 1326 (2d Cir.1969) ("*CBS*" or "the *CBS* case"), which, like this case, involved a work assignment dispute between two unions, the Second Circuit held that a federal district court had jurisdiction under § 301(a) of the LMRA to consolidate two pending arbitration proceedings, noting that "[t]here is ample authority holding that § 301 gives the federal courts broad jurisdiction to deal with many types of controversies that arise between labor and management," and, later, that "[s]urely the taking of jurisdiction by the district court in the present dispute is in line with the overall national policy of furthering industrial peace by resort to agreed-upon arbitration procedures." *Id.* 414 F.2d at 1328. The Court therefore addresses the issue of whether it should order Local 478 to participate in a tripartite arbitration despite its opposition to such arbitration and despite the fact that an arbitrator has already assigned some of the disputed work to Local 478.

Notably, in *CBS*, the Second Circuit held that the district court had the power to compel tripartite arbitration of union work assignment disputes, and, under the circumstances of that case, did not abuse its power

---

**3.** Expedited judicial resolution of labor disputes is favored. *See Rothlein v. Armour & Co.,* 391 F.2d 574, 578 (3d Cir.1968) ("It seems proper under Federal Labor Law that ... suits ... under Section 301 of the L.M.R.A. not be dragged out indefinitely by procedural or preliminary controversies and that individual claims, if they are properly before the court under Section 301 jurisdiction, be decided on the merits without unnecessary delay.").

in ordering such arbitration. Unlike this case, however, neither union in the *CBS* case had obtained an arbitration award entitling its members to disputed work. In approving the use of tripartite arbitration, the circuit court noted that the unions' contracts with their employer contained broad arbitration provisions, although, as here, neither contract specifically provided for tripartite arbitration. In addition, the contracts provided that arbitration would be subject to the rules of the AAA, and the union supportive of tripartite arbitration agreed to use the other union's arbitrator. Quoting with approval from the district court's opinion, the Second Circuit stated that " '[c]ompelling all three parties to the dispute to submit their grievances to the same arbitration is practicable, economical and convenient for the parties and the arbitrator. It is sound because it not only avoids duplication of effort but the possibility of conflicting awards.' " *Id.* 414 F.2d at 1329 (quoting 293 F.Supp. 1400, 1403).

 In so holding, the Second Circuit specifically rejected the argument that a collective bargaining agreement is to be construed in accordance with common law contract principles, which would consequently preclude a court from going beyond the agreement if it did not provide for multiparty arbitration,[4] and instead relied upon the emerging recognition by the Supreme Court of a " 'new common law' " for labor contracts. *Id.* (quoting *Transportation–Communication Employees Union v. Union Pac. R.R. Co.,* 385 U.S. 157, 161, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966)). Thus, as the Second Circuit explained in *CBS,* the collective bargaining agreement is " 'more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate' " and " 'covers the whole employment relationship.' " *CBS,* 414 F.2d at 1328 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578–79, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Therefore, " 'it is necessary to consider the scope of other related collective bargaining

agreements, as well as the practice, usage and custom pertaining to all such agreements,' " particularly " 'when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments.' " *CBS,* 414 F.2d at 1329 (quoting *Transportation–Communication Employees Union,* 385 U.S. at 161, 87 S.Ct. 369); *see also United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *John Wiley & Sons v. Livingston,* 376 U.S. 543, 549, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Indeed, the "arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." *Warrior & Gulf Navigation Co.,* 363 U.S. at 578, 80 S.Ct. 1347.

The Supreme Court has recognized a profound difference between arbitration of commercial matters and arbitration of labor disputes. *See id.* "In the commercial case, arbitration is the substitute for litigation. [In labor disputes] arbitration is the substitute for industrial strife." *Id.* The Supreme Court has also observed that the circumstances underlying the formation of a commercial contract and the execution of a collective bargaining agreement are distinct:

> A collective bargaining agreement is an effort to erect a system of industrial self-government. When most parties enter into contractual relationship they do so voluntarily, in the sense that there is no real compulsion to deal with one another, as opposed to dealing with other parties. This is not true of the labor agreement. The choice is generally not between entering or refusing to enter into a relationship, for that in all probability pre-exists the negotiations. Rather it is between having that relationship governed by an agreed-upon rule of law or leaving each and every matter subject to a temporary resolution

---

4. As the present case involves one employer and two unions, the Court uses the term "tripartite" to refer to the requested combined arbitration of Local 295's and Local 478's claims. Indeed, since most work assignment disputes involve three parties, the term "tripartite arbitration"

has become something a term of art in this area of the law. However, the Court's use of the term "tripartite" is not meant to suggest that such claims never involve more than three parties. In such cases, the term "multiparty" arbitration is more appropriate.

dependent solely upon the relative strength, at any given moment, of the contending forces. . . . Courts and arbitration in the context of most commercial contracts are resorted to because there has been a breakdown in the working relationship of the parties; such resort is the unwanted exception. But the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties.

*Id.* 363 U.S. at 580–81, 80 S.Ct. 1347.

The *CBS* opinion has continuously been cited by district and circuit courts throughout the country in ordering parties to participate in tripartite arbitration of work assignment disputes. *See, e.g., Miron Constr. Co. v. International Union of Operating Engineers, Local 139,* 44 F.3d 558, 563 (7th Cir. 1995); *U.S. Postal Service v. National Rural Letter Carriers Ass'n,* 959 F.2d 283, 286 (D.C.Cir.1992); *Retail, Wholesale and Dep't Store Union, Local 390 v. Kroger Co.,* 927 F.2d 275, 281 (6th Cir.1991); *United Industrial Workers v. Kroger Co.,* 900 F.2d 944, 947 (6th Cir.1990); *United States Postal Serv. v. American Postal Workers Union,* 893 F.2d 1117, 1120 (9th Cir.1990); *RCA Corp. v. Local Union 1666 Int'l Bhd. of Elec. Workers,* 633 F.Supp. 1009, 1012 (E.D.Pa. 1986); *Local 201 v. Shaker, Travis & Quinn, Inc.,* 555 F.Supp. 314, 319 (S.D.N.Y.), *vacated on other grounds,* 709 F.2d 178 (2d Cir.1983).

However, while many federal courts have acknowledged the efficacy of tripartite arbitration of labor assignment claims, they have divided—sometimes sharply—over the circumstances under which tripartite arbitration is appropriate. As a general rule, courts have refused to order tripartite arbitration unless the unions are bound by a collective bargaining agreement that requires at the very least *bipartite* arbitration of the dispute at issue, and unless each of the unions has invoked its agreement's arbitration provision by filing a grievance. *See United States Postal Serv. v. National Rural Letter Carriers' Ass'n,* 959 F.2d at 287; *Local 390,* 927

F.2d at 278–79; *U.S. Postal Service v. American Postal Workers Union,* 893 F.2d at 1120–21. However, the Seventh Circuit has expressed an unwillingness to order tripartite arbitration in the absence of a contractual mechanism specifically authorizing such arbitration. *See Miron Constr. Co.,* 44 F.3d at 563. The Ninth Circuit has taken the position that tripartite arbitration may only be ordered *before* conflicting arbitration awards have been entered. *United States Postal Serv. v. American Postal Workers Union,* 893 F.2d at 1121; *Louisiana–Pacific Corp. v. International Bhd. of Elec. Workers,* 600 F.2d 219, 223 (9th Cir.1979). Thus, because of the Ninth Circuit's recognition of a "firm federal policy on the finality of a labor arbitrator's decision," *Louisiana–Pacific Corp.,* 600 F.2d at 223, courts within that circuit must uphold final arbitration awards regarding the assignment of particular work, even if the awards are in conflict. *See United States Postal Serv. v. American Postal Workers Union,* 893 F.2d at 1121 ("In our circuit, the possibility of conflicting awards is a serious threat because of [the *Louisiana–Pacific* decision]. Parties must request court intervention before receiving conflicting awards, otherwise the conflicting awards will stand—even if the awards claim to apply the same substantive rule."). However, the Sixth and Tenth Circuits have rejected the Ninth Circuit's position in this regard, holding that tripartite arbitration is particularly appropriate where conflicting arbitration awards have been issued. *See Local 390 v. Kroger Co.,* 927 F.2d at 280–81 (tripartite arbitration under such circumstances "cured the inherent weakness of the bipartite awards . . . and was a practicable, economical, convenient and fair way of coping with the inconsistent awards" (internal quotation omitted)); *Local # 850, Int'l Ass'n of Machinists & Aerospace Workers v. T.I.M.E.–Dc, Inc.,* 705 F.2d 1275, 1277–78 (10th Cir. 1983); *see also* Sherrard L. Hayes, Comment, *The Federal Circuits' Response To Conflicting Arbitration Awards In Labor Disputes: Split Or Harmony Between The Sixth And Ninth Circuits?,* 59 Tenn.L.Rev. 353 (1992).

## II. *Government of the United Kingdom of Great Britain v. Boeing Co.*—The Second Circuit Again Considers the Issue of Tripartite Arbitration

Subsequent to *CBS*, the Second Circuit revisited the topic of tripartite arbitration in *Government of the United Kingdom of Great Britain v. Boeing Co.*, 998 F.2d 68 (2d Cir. 1993) (*"United Kingdom"* or "the *United Kingdom* case"). Unlike *CBS*, however, *United Kingdom* was a commercial case arising solely under the FAA, and not a labor dispute arising under the LMRA. The *United Kingdom* case was triggered by a January 1989 incident involving damage to a helicopter manufactured by The Boeing Company ("Boeing") with a fuel system designed by Textron, Inc. ("Textron"). Both Boeing and Textron had signed a contract with the plaintiff Government of the United Kingdom ("the United Kingdom") that contained an identical arbitration clause. The United Kingdom filed a petition to compel consolidated arbitration of its claims against Boeing and Textron, which petition was granted by the district court, despite Boeing's refusal to consent to tripartite arbitration.

The Second Circuit reversed, however, holding that "a district court cannot order consolidation of arbitration proceedings arising from separate agreements to arbitrate absent the parties' agreement to allow such consolidation." *Id.* 998 F.2d at 69. In so holding, the court expressly retreated from that aspect of its earlier decision in *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir.1975), which found support in the FAA and the Federal Rules of Civil Procedure for the consolidation of commercial arbitration proceedings even if consolidation was not strictly in accordance with the terms of the parties' agreements. In *Nereus Shipping*, which was a commercial dispute between companies involved in the shipping of petroleum, the court had held, consistent with its prior precedent in *Robert Lawrence Co. v. Devonshire Fabrics*, 271 F.2d 402 (2d Cir.1959), that "the liberal purposes of the Federal Arbitration Act clearly require that this act be interpreted so as to permit and even to encourage the consolidation of arbitration proceedings...." *Nereus Shipping*, 527 F.2d at 975.

In countermanding this rationale in *United Kingdom*, the Second Circuit discerned that cases decided by the Supreme Court subsequent to the circuit's decisions in *Robert Lawrence* and *Nereus*, all involving commercial, not labor, agreements, undermined the circuit's previous interpretation of the liberal purposes of the FAA. *See United Kingdom*, 998 F.2d at 72 and cases cited thereat. Thus, the Second Circuit recognized in *United Kingdom* that "[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation...." *United Kingdom*, 998 F.2d at 72 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–21, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). Noting, further, that "[e]ach of our sister circuit courts that has considered the question since these Supreme Court decisions has held that district courts do not have the authority to undermine the FAA to consolidate arbitrations absent the parties' consent," *id.*, the Second Circuit was constrained to conclude that "a court is not permitted to interfere with private arbitration arrangements in order to impose its own view of speed and economy. This is the case even where the result would be the possibly inefficient maintenance of separate proceedings." *Id.* 998 F.2d at 73 (quoting *American Centennial Ins. Co. v. National Cas. Co.*, 951 F.2d 107, 108 (6th Cir.1991)). Specifically rejecting the United Kingdom's argument that permitting two separate proceedings to take place could lead to inconsistent results, the court held that such concerns "do not provide us with the authority to reform the private contracts which underlie this dispute. If contracting parties wish to have all disputes that arise from the same factual situation arbitrated in a single proceeding, they can simply provide for consolidated arbitration in the arbitration clauses to which they are a party." *Id.* at 74.

The question that remains is whether *United Kingdom* has overruled or otherwise restricted the applicability of *CBS* in the specific area of labor assignment disputes. Local 478 contends that *CBS* has been curtailed by *United Kingdom*, and that it conse-

quently cannot be compelled to participate in tripartite arbitration without its consent. The Second Circuit did not cite to *CBS* in *United Kingdom,* nor did it acknowledge the substantial body of evolving law regarding the efficacy of multiparty arbitration of work disputes. The Court must determine, therefore, the import of this omission and whether the holding of *United Kingdom,* a commercial case that does not implicate the LMRA, should be extended to union work assignment disputes.

### III. The *Active Glass* Decision

In making this determination, the Court does not write on a clean slate. In *Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580,* 875 F.Supp. 245 (S.D.N.Y.1995), which involved the competing claims of two unions to payment for particular work, the district court specifically determined that *United Kingdom,* and not *CBS,* was the dispositive precedent. It held, therefore, that the two unions could not be compelled to participate in tripartite arbitration since the arbitration provisions of their collective bargaining agreements did not provide for multiparty arbitration. *Id.* 875 F.Supp. at 252. The district court did note in a footnote, however, that *Active Glass* was factually different than *CBS* in that, unlike *CBS,* "the work ha[d] already been performed, there [was] no risk of imminent labor unrest, and the only peril [was] that [the employer might] be forced to pay twice for the same work." *Id.* 875 F.Supp. at 252 n. 8.

In embracing *United Kingdom,* as well as the Supreme Court and sister circuit cases relied on therein, the district court in *Active Glass* failed to recognize that each of those cases were commercial cases, governed by the strictures of the FAA, and did not analyze whether their rationale should apply with equal vigor under the LMRA in light of the conceptual dichotomy recognized by the Supreme Court between commercial and labor cases. It would seem that this principled dichotomy would support the continued viability of *CBS* and allow a district court to exercise appropriate discretion in the labor arena in determining whether to order multiparty arbitration, notwithstanding the absence of consent. Nonetheless, although the

Second Circuit has never overruled *CBS,* or articulated that *United Kingdom* governs the labor agreement under the LMRA as well as the commercial contract under the FAA, it chose to affirm, albeit by summary order, the district court's order in *Active Glass* "substantially for the reasons stated" by the district court. *Active Glass Corp v. Architectural and Ornamental Workers Local Union 580,* 101 F.3d 687 (2d Cir.1996).

Notwithstanding *Active Glass,* a sister district court in this circuit has recently given its imprimatur to the power of a district court to order tripartite arbitration of work assignment disputes, regardless of consent. *See Matter of Arbitration Between Office and Prof'l Employees,* 1998 WL 226160, at *3 (S.D.N.Y. May 5, 1998). In declining to treat the Second Circuit's affirmance of *Active Glass* as overruling *CBS,* the district court reasoned in *Matter of Office and Prof'l Employees* "that the Second Circuit has nowhere indicated that [*CBS* ] is no longer good law, that such a conclusion would be in conflict with all of the other circuits which have reached this issue, and that independent grounds exist to justify the Second Circuit's affirmation of *Active Glass,* namely the facts enumerated by the district court in footnote 8, specifically that the dispute did not involve an ongoing jurisdictional dispute." *Id.,* 1998 WL 226160, at *3. The district court might have appropriately added that the affirmance by the Second Circuit in *Active Glass,* being by summary order, was simply of no precedential value. *See* Second Circuit Rule 0.23. Nonetheless, *Active Glass* is pragmatically troublesome and, in the absence of precedential articulation by the Second Circuit, the circuit's district courts are seemingly adrift as to when, if at all, they may order multiparty arbitration of labor disputes without the parties' consent.

In the absence of an overruling of *CBS* by the Second Circuit, the circuit's discrete treatment of *United Kingdom,* without reference to *CBS,* in the commercial setting, and the inappropriate conceptual commingling of commercial contracts and labor agreements by the district court in *Active Glass,* the Court believes that it is possessed of the power to consider the appropriateness of tri-

partite arbitration in the present case notwithstanding the absence of consent.

However, in the exercise of the court's discretion, it will not now order tripartite arbitration for the following reasons, notwithstanding the broad arbitration provision in both CBAs. Initially, Emery's plight is largely of its own making since it could reasonably have anticipated, given the nature of its business and its interplay with the two unions, that the subject jurisdictional work dispute might very well occur. It should have made some showing to the Court, therefore, that it attempted to negotiate a tripartite arbitration provision during the collective bargaining negotiations with the unions, or that it had sought tripartite arbitration of the Local 478 grievance in 1996. Because the Local 478 arbitration has already culminated in an award of the disputed shuttle work to Local 478, this case is very different from *CBS*. Second, the collective bargaining agreements provide for different arbitral formats, and would very likely result in two different arbitrators. It will be recalled that this potential problem was obviated in *CBS* by the consent of one union to the other union's arbitrator. Third, it is certainly possible that the award in the Local 295 arbitration will not necessarily conflict either with the Local 478 shuttle work award or the partial settlement agreement between Emery and Local 478. Finally, as counsel for Local 478 noted at oral argument, it does not appear that immediate intervention is necessary to keep the peace, since both parties have no-strike provisions in their contracts and there is no indication that labor unrest is imminent. *See* Transcript at 22; *see also* Local 295 CBA at pg. 23 ("The Union and the employer agree that there shall be no strike, lock-out, work stoppage, or legal proceedings without first using all possible means of a settlement, as provided for in this Agreement, if any controversy should arise."); Local 478 CBA at pg. 16 ("The Union agrees that there shall be no strike, picketing, concerted stoppage, concerted retarding of work or concerted cessation of service during the continuance of this contract.").

## CONCLUSION

For the above-stated reasons, Emery's application to compel tripartite arbitration is denied. As resolution of Emery's Order to Show Cause apparently disposes of all of the issues raised in the complaint, the Court hereby notifies the parties that it intends to dismiss the case *sua sponte* on October 30, 1998. If any of the parties believe that *sua sponte* dismissal is not indicated, the Court should be so advised by letter prior to that date.

**SO ORDERED.**