06-0241-cv
Drywall Tapers v. Nastasi & Assoc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2006

Heard: February 5, 2007          Decided: May 16, 2007)

Docket Nos. 06-0241-cv(L),06-0242-cv(con),06-1154-cv(con)

- - - - - - - - - - - - - - - - - - - - - - - - - - -
DRYWALL TAPERS AND POINTERS OF GREATER NEW
YORK, LOCAL UNION 1974 OF I.U.P.A.T., AFL-CIO,
        Plaintiff-Counter-Defendant-Appellee,

                        v.

NASTASI & ASSOCIATES INC.,
        Defendant-Counterclaimant-Appellant,

CARPENTERS LOCAL 52, UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA,
        Proposed Intervenor-Appellant.
- - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: MESKILL, NEWMAN, and SACK, Circuit Judges.

        Appeal from the December 19, 2005, Order of the United States
District Court for the Eastern District of New York (John Gleeson,
District Judge), issuing a consent injunction allocating drywall
finishing work.  In 06-0241, the appeal of the injunction by Nastasi
& Associates, Inc., the appeal is dismissed; in 06-1154, the appeal by
Local 52 from denial of intervention, the Order is affirmed on the
ground that the District Court lacked jurisdiction after the filing of
a notice of appeal; in 06-0242, the appeal of the injunction by Local
52, the case is remanded.

                        Jeffrey S. Dubin, Huntington, N.Y., for
                            Defendant-Counterclaimant-Appellant Nastasi
                            & Associates, Inc.

John H. Byington III, Meyer, Suozzi, English & Klein, P.C., Melville, N.Y., for Proposed Intervenor-Appellant Carpenters Local 52.

Daniel E. Clifton, Lewis, Clifton & Nikolaidis, New York, N.Y., for Plaintiff-Counter-Defendant-Appellee Local Union 1974.

JON O. NEWMAN, Circuit Judge.

These three consolidated appeals, one by a New York construction contractor and two by a New York labor union local, primarily present issues concerning the rights of a consenting party and a non-party to appeal. Both the contractor, Nastasi & Associates Inc. ("Nastasi"), and the local, Carpenters Local 52, United Brotherhood of Carpenters and Joiners of America ("Local 52"), are attempting to appeal the December 19, 2005, Order for an injunction issued by the United States District Court for the Eastern District of New York (John Gleeson, District Judge). The injunction requires several New York contractors, including Nastasi, to contract drywall finishing work to the Appellee, Drywall Tapers and Pointers of Greater New York, Local Union 1974 of I.U.P.A.T., AFL-CIO ("Local 1974"). Local 52, which was not a party to the proceeding in the District Court, also appeals the District Court's February 13, 2006, denial of its motion to intervene. We dismiss Nastasi's appeal, affirm on Local 52's appeal from the denial of intervention, and remand on Local 52's appeal from the injunction.

## Background

Prior litigation. This appeal is another chapter in a

jurisdictional dispute among New York City construction unions that has been going on for more than 25 years. At the core of this saga was a dispute between two labor unions representing drywall finishing workers--Plaintiff-Appellee Local 1974 and Local 530 of the Operative Plasterers' and Cement Masons' International Association, AFL-CIO ("Local 530"), which is not involved in the current litigation. Both unions are members of the Building & Construction Trades Council of Greater New York ("Trades Council"). More than a century ago, the Trades Council and the Building Trades Employers' Association (an organization of construction contractors associations) ("BTEA"), have formed more than a century ago the "New York Plan for the Settlement of Jurisdictional Disputes" ("New York Plan"). Through the decisions of the official organs of the New York Plan (published in the "Green Book"), specific types of construction work in New York City were assigned to specific unions, and the member employers and unions must abide by those work assignments.

Local 530 has tried for years to violate Local 1974's jurisdiction in New York by assuming drywall finishing jobs that rightfully belonged to Local 1974. These attempts have led to a series of court decisions generally upholding Local 1974's position. See Drywall Tapers and Pointers of Greater New York, Local 1974 v. Local 530 of Operative Plasterers and Cement Masons International Association, 954 F.2d 69 (2d Cir. 1992); Drywall Tapers and Pointers of Greater New York, Local 1974 v. Local 530 of the Operative Plasterers' and Cement Masons' International Association, 2002 WL

31641597 (E.D.N.Y. Nov. 19, 2002); Drywall Tapers and Pointers of Greater New York, Local 1974 v. Local 530 of the Operative Plasterers' and Cement Masons' International Association, 2005 WL 638006 (E.D.N.Y. Mar. 17, 2005) (ordering the March 17, 2005, injunction, which enjoined Local 530 from performing drywall finishing in New York City and, in effect, allocated drywall finishing work in New York City to Local 1974; this order was subsequently incorporated in the New York Plan's Green Book).

Pending litigation. A week after the March 17, 2005, decision, the United Brotherhood of Carpenters and Joiners of America--an organization not previously involved in the litigation--chartered a new local union, Local 52, one of the current appellants, to represent drywall finishing workers in the State of New York.  Local 52 was not affiliated with the Trades Council, and is therefore not bound by the New York Plan.  Shortly after Local 52 was chartered, some New York contractors who had previously employed Local 530 workers for drywall finishing jobs entered into collective bargaining agreements with Local 52.[1]

---

[1]Judge Gleeson has more than once expressed his impression that Local 52 was created for the sole purpose of taking Local 530's place in the drywall finishing competition with Local 1974, once Local 530 was finally defeated in court:

> [E]ight days after the [March 17, 2005,] injunction was issued, a new drywall finishing local popped up, giving the

-4-

Local 1974 filed a complaint with the District Court against four construction managers and their respective drywall subcontractors, who have employed Local 52 members to do drywall finishing work in four Manhattan construction sites. Local 1974's complaint alleged violation of the District Court's March 17, 2005, injunction by failing to employ Local 1974 members, and sought enforcement of the New York Plan (to which the Defendants were allegedly parties), pursuant to section 301 of the Labor Management Relations Act. Local 52, not being a party to the New York Plan and thus not bound by the 2005 injunction, was not named as a defendant in the complaint.

Local 1974's suit against the contractors did not reach trial. After the District Court denied the Defendants' motions to dismiss and indicated its intent to enter a preliminary injunction enjoining the Defendants from further violating the March 17, 2005, injunction (subject to confirmation that the Defendants are bound by the New York Plan), the parties reached an agreement that put an end to the litigation ("Settlement Agreement"). In December 2005, the District

impression that Local 530 may have been reincarnated. Work that was required by the March 17, 2005 injunction to be assigned to Local 1974 was promptly assigned to the new local instead.

Drywall Tapers and Pointers of Greater New York, Local 1974 v. Bovis Lend Lease Interiors, Inc., No. 05-CV-2746, slip op. At 3-4 (E.D.N.Y. Dec. 19, 2005).

Court issued an amended Consent Injunction, ("Consent Injunction") adopting the parties' Settlement Agreement. Nastasi, one of the drywall contractor-defendants, appeals the Consent Injunction in No. 06-0241, notwithstanding its agreement to the entry of the Consent Injunction, and Local 52 appeals the Consent Injunction in No. 06-0242, notwithstanding its not being a party to the proceeding.

Local 52's attempted intervention. While Local 1974's action was still pending, Local 52--which is repeatedly mentioned in Local 1974's complaint but, as noted, was not a party to the proceeding (nor to the New York Plan)--instituted several proceedings with the National Labor Relations Board ("NLRB"), stressing its legitimate role in the New York drywall industry and attacking Local 1974 for the remedies it sought in this action. Thus, Local 52 initiated several representation proceedings with the NLRB, under which majorities of workers employed by some of the defendants have elected Local 52 as their collective bargaining representative. Local 52 also filed with the NLRB a series of formal charges against Local 1974 and the defendant-employers who complied with the preliminary injunction, alleging unfair labor practices in violation of sections 8(b)(4)(A) and 8(e) of the National Labor Relations Act.

On November 4, 2005, while the parties to Local 1974's action were still in negotiations and while Local 52's proceedings with the NLRB were still pending, Local 52 filed a motion with the District Court to intervene as of right in Local 1974's action, pursuant to Fed. R. Civ. P. 24(a)(2).

Local 52's motion to intervene was scheduled for oral argument on January 20, 2006.  In the meantime the parties reached their Settlement Agreement, and on December 19, 2005, the District Court entered the Consent Injunction.  Local 52 filed its notice of appeal from the Consent Injunction on January 13, 2005, before its motion to intervene was heard and disposed of.

The District Court denied Local 52's motion to intervene for lack of jurisdiction because Local 52 had filed a notice of appeal, contesting the Consent Injunction.  Local 52 appeals the denial of intervention in No. 06-1154.

Discussion

I. Nastasi's Appeal

Local 1974 challenges Nastasi's right to appeal the Consent Injunction on the ground that Nastasi was a party to the Settlement Agreement that was adopted by the District Court in the Consent Injunction.  The Consent Injunction incorporates the exact language of the Settlement Agreement.  The Settlement Agreement further states that it "constitutes a final settlement of all claims between Local 1974 and Defendant [Nastasi] arising from or relating to the Federal Action," and that the parties "have executed this Settlement Agreement knowingly, voluntarily and without duress."

An appeal from a consent injunction is "generally unavailable" since the parties are held to have waived any objection to issues included in the injunction.  See New York *ex rel*. Vacco v. Operation Rescue National, 80 F.3d 64, 69 (2d Cir. 1996); United States v.

-7-

International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 172 F.3d 217, 222 (2d Cir. 1999); Kelly's Trust v. Commissioner of Internal Revenue, 168 F.2d 198, 199 (2d Cir. 1948) ("[A] consent judgment by its nature precludes an appeal.").

Nastasi offers three arguments to avoid this well settled rule. First, it contends that its consent to the Settlement Agreement resulting in the Consent Injunction was not voluntary. As its brief asserts:

> The Injunction was consensual only in the sense that it was clear to all of the defendants that if they did not negotiate a consent injunction, the District Court intended to enter a more onerous injunction against Nastasi and all of the other defendants.

The argument is entirely without merit. Most disputes are settled because at least one of the parties perceives at least a risk of a more disadvantageous outcome if the litigation proceeds. Nastasi makes no claim that its consent to the Settlement Agreement was obtained under duress or any other circumstance that might avoid the consequences of its voluntary action.

Second, Nastasi contends that the Settlement Agreement allows for an appeal. It relies on Article 2 of the Settlement Agreement to claim that it reserved its right to appeal the Consent Injunction:

> Notwithstanding any provision herein to the contrary, neither Party waives its rights under applicable law to seek the vacation or modification of the Order.

Nastasi claims that its appeal seeks to vacate the Consent Injunction, as permitted by Article 2. Local 1974 responds that Article 2 refers to vacation or modification by the District Court, in case of changing

-8-

circumstances.

On this issue of contract interpretation, Local 1974 is entirely correct. The traditional inclusion of language that permits modification of an injunction in the event of changed circumstances cannot be transformed into an appellate right to undo the agreement that has just been consummated.

Third, and of arguably more substance, Nastasi relies on one of the few exceptions to the rule prohibiting appeal by a party to a consent decree--the District Court's lack of subject matter jurisdiction. See, e.g., Operation Rescue National, 80 F.3d at 69. Nastasi contends that the anti-injunction prohibitions in the Norris-LaGuardia Act ("NLA"), 29 U.S.C. §§ 101, 104, preclude the District Court's jurisdiction. Local 1974 responds that the NLA limits only a district court's remedial powers, rather than its subject matter jurisdiction.

Local 1974 is correct. As we have previously ruled, "Norris-LaGuardia is a limit on remedial authority, not subject matter jurisdiction." Emery Air Freight Corp. v. International Brotherhood of Teamsters, Local 295, 185 F.3d 85, 89 (2d Cir. 1999) (citing Avco Corp. v. Aero Lodge No. 735, 390 U.S. 577, 560-61 (1968)). See also Aeronautical Industrial District Lodge 91 v. United Technologies Corp., 230 F.3d 569, 575, 579-82 (2d Cir. 2000) (discussing NLA limitations on a specific injunction as a matter distinct from the district court's subject matter jurisdiction).

Although Nastasi cites our decision in In re Petrusch, 667 F.2d

-9-

297, 298 (2d Cir. 1981), and several other decisions in which courts have referred to the NLA anti-injunction prohibitions as pertaining to the district court's "jurisdiction," see, e.g., Triangle Construction and Maintenance Corp. v. Our Virgin Islands Labor Union, 425 F.3d 938, 942, 947 (11th Cir. 2005); Ozark Air Lines, Inc. v. National Mediation Board, 797 F.2d 557, 562 (8th Cir. 1986), the Supreme Court has recently cautioned that use of the term "jurisdictional," even in the High Court's own opinions, does not always refer to the technical issue of a court's subject matter jurisdiction, see Eberhart v. United States, 546 U.S. 12, 126 S. Ct. 403, 406-07 (2005). Avco and Emery Air Freight illustrate that observation. See also Smith's Management Corp. v. International Brotherhood of Electrical Workers, Local Union No. 357, 737 F.2d 788, 792 (9th Cir. 1984); National Maritime Union v. Aquaslide 'N' Dive Corp., 737 F.2d 1395, 1398 (5th Cir. 1984).

Since Nastasi cannot appeal the Order granting the Consent Injunction, its appeal must be dismissed.

II. Local 52's Appeals

Local 52 has filed two appeals, one from the Order issuing the Consent Injunction and one from the District Court's denial of its motion to intervene. Because of the relationship between these appeals, we discuss them together.

Local 52 filed its Rule 24(a)(2) motion to intervene about six weeks before the District Court entered the Consent Injunction. The motion was initially calendared for argument on December 16, 2005. The Settlement Agreement was finalized on December 14, 2005. On

-10-

December 16, 2005, the District Court approved the consent agreement of the then-existing parties and issued the Order for the Consent Injunction, which was insignificantly amended three days later. The argument on Local 52's intervention motion was deferred for several weeks. After entry of the Consent Injunction, Local 52 filed a notice of appeal from the injunction Order. The District Court then denied the intervention motion on the ground that Local 52's notice of appeal had divested the Court of jurisdiction. Local 52 views itself as the victim of an appellate "Catch 22": it promptly filed an appeal from the injunction Order so that, if its intervention motion was granted, it would not be considered to have appealed beyond the applicable 30-day time limit, see Fed. R. App. P. 4(a)(1)(A), but its notice of appeal deprived the District Court of jurisdiction to permit intervention.

Local 52 itself appears to have contributed to its own predicament. Although we make no ruling on whether any delay in submitting its motion to intervene will justify denial of that motion, it appears that a more expeditious filing of its motion might well have alerted the District Court to the need to act on that motion before approving the consent agreement. In any event, Local 52's predicament was at least in part precipitated by the action of the District Court in adjudicating the litigation-ending motion to enter the consent judgment while Local 52's motion for intervention remained pending. We conclude that this was ill advised. Although there is authority for granting a motion to intervene in the Court of Appeals,

-11-

see Bates v. Jones, 127 F.3d 870, 873-74 (9th Cir. 1997); Hurd v. Illinois Bell Telephone Co., 234 F.2d 942, 944 (7th Cir. 1956), it will normally be the better practice for a district court to rule on a pending motion to intervene before ruling on the merits of pending litigation.

What we can or should do at this point to rectify the situation is not entirely clear. The District Court did not err in denying Local 52's intervention motion once the notice of appeal of the Court's injunction Order divested the Court of jurisdiction to affect that Order. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982); Roe v. Town of Highland, 909 F.2d 1097, 1100 (7th Cir. 1990); Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 298, 299 (5th Cir. 1984); see also United States v. Katsougrakis, 715 F.2d 769, 776 (2d Cir. 1983); contra Halderman v. Pennhurst State School & Hospital, 612 F.2d 131, 134 (3d Cir. 1979) (in banc). Therefore, on Local 52's appeal from denial of intervention, we are obliged to affirm. We do so, however, only to agree with the District Court's jurisdictional ruling, without intimating any view as to the merits of the intervention motion.

Turning next to Local 52's purported appeal from the injunction Order, we encounter the threshold obstacle that Local 52 is not a party, and normally a non-party lacks standing to appeal. See Marino v. Ortiz, 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.").

-12-

Local 52 seeks to avoid this rule by contending that the Consent Injunction did not constitute a final resolution of the case. It views the injunction as an interlocutory injunction, an appeal from which does not divest the District Court of its jurisdiction over unrelated matters. See New York State NOW v. Terry, 886 F.2d 1339, 1350 (2d Cir. 1989). First, Local 52 points out, the action has not yet been dismissed,[2] and the Consent Injunction should therefore be treated as an interlocutory injunction. We disagree. The Consent Injunction disposed of the merits of the litigation; the remaining filing of a formal stipulation of dismissal was a ministerial act, which did not destroy the finality of the Consent Injunction. Cf. Motorola Credit Corp. v. Uzan, 388 F.3d 39, 53-54 (2d Cir. 2004).

Second, Local 52 argues that the litigation remains pending because Article 2 of the Settlement Agreement contemplates the possibility of returning to court to seek modification. That argument also fails because the District Court's authority to modify the

---

[2]Article 10 of the Settlement Agreement reads:

> This Settlement Agreement constitutes a final settlement of all claims between Local 1974 and Defendant [Nastasi] arising from or relating to the Federal Action. Within ten (10) business days after execution of this Settlement Agreement or the Court's entry of the Order, whichever is later, the Parties shall execute a stipulation of dismissal... and shall file such stipulation with the Clerk's office of the Federal District Court for the Eastern District of New York, dismissing the Federal Action with prejudice.

-13-

Consent Injunction does not deprive it of finality.

Thus, Local 52's status as a non-party prevents us from adjudicating the merits of its challenge to the Consent Injunction. However, we conclude that its non-party status does not prevent us from acting to cut through this appellate Catch-22. We believe it is appropriate to remand Local 52's purported appeal from the Consent Injunction to the District Court to enable that Court, with its jurisdiction restored, to adjudicate the merits of Local 52's intervention motion. See Marino, 484 U.S. at 304 ("We think the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable."); Roe, 909 F.2d at 1100 ("Although the filing of the notice [of appeal] would deprive the district court of power to act on the motion to intervene, the cause may be remanded for that purpose.") (quotation marks omitted); 20 Moore's Federal Practice § 303.10[1][b] at 303-19 (3d ed. 2006). If that motion is denied, Local 52 may appeal such a denial. If that motion is granted, Local 52, as a party, may then seek any relief to which it may be entitled, including a renewal of its purported appeal of the injunction Order. Since Local 52 filed a notice of appeal within 30 days of the Order issuing the Consent Injunction, albeit at a time when it was not a party, its status as a party, if intervention is granted, should permit it to renew its appeal. Cf. Fed. R. App. P. 4(a)(2) (premature notice of appeal, filed before entry of judgment, treated as filed on date of entry); see also United Airlines, Inc. v. McDonald, 432 U.S. 385, 396 (1977) (noting

-14-

that post-judgment motion to intervene was filed within time when existing parties could have appealed).  To avoid the possibility of a delay in renewing such an appeal, we add to our remand the proviso that in the event that Local 52 becomes a party, it must renew its appeal within 30 days of the date intervention is permitted or the date the District Court denies any request Local 52 might make for modification of the Consent Injunction Order, whichever is later.

## Conclusion

Nastasi's appeal, No. 06-0241, is dismissed; on Local 52's appeal in No. 06-1154, the District Court's denial of Local 52's motion to intervene is affirmed solely on the ground that the District Court lacked jurisdiction; on Local 52's appeal in No. 06-0242, the case is remanded for further proceedings consistent with this opinion.